TISHIMINGO SAVINGS INSTITUTION *v.* J. W. BUCHANAN ET AL.

1. SAVINGS INSTITUTION. *Charter. Power to loan money and take security on land.*

    The charter of the Tishimingo Savings Institution provides: "That said company may invest its capital and profits, or any portion thereof, in bonds, notes, bank-notes, gold or silver coin, treasury notes, bullion, bills of exchange, or any other evidence of debt and change the same at pleasure;" and "that said company may hold and possess any real estate that may be necessary to carry on their business, or that may be convenient therefor, and also any real estate which they may at any time take in payment of debt." Under these provisions of its charter, this corporation has the power to loan money and to secure the same by taking a deed of trust on land.

2. LIMITATION OF ACTIONS. *Suspension of statute by injunction.*

    Where a debt is secured by a deed of trust on real estate, and the creditor is enjoined from foreclosing the trust-deed, the Statute of Limitations is suspended during the operation of the injunction even though it be disregarded by the creditor.

3. SAME. *Tender of amount due. Effect as to lien.*

    Where a note is secured by a deed of trust on land, a tender of the amount due on the note does not discharge the lien of the deed of trust.

4. INTEREST. *Effect of tender.*

    A tender of the amount due on a note secured by a deed of trust does not stop interest on the debt where the debtor, after he has made the tender, assails the validity of the claim and seeks to have the deed of trust cancelled as a nullity.

5. INTEREST. *Specified rate. Effect of maturity of note.*

    Where the payment of a specified rate of interest is stipulated in a promissory rate, such rate continues till payment of the principal debt, as well cited after as before the maturity thereof. *Meaders et al.* v. *Gray, ante,* p. 400, cited.

6. SAVINGS INSTITUTION. *Charter. Power to charge a rate of interest not allowed under general law.*

    The charter of the Tishimingo Savings Institution, Acts 1866–67, p. 469, provides: "That said company shall be authorized to pay and receive such rate of interest as may be mutually agreed upon by said company with its customers." This provision was not intended to confer an exclusive privilege of charging a rate of interest which it was unlawful for others to receive, but the intention of the Legislature was to confer the right to agree for a rate of interest within the limits prescribed by the general law for all.

7. SAME. *Charter. Doubtful clause in respect to interest construed.*

    A doubt whether the Legislature intended by the language used in the charter to confer upon a corporation the power to bargain for interest not allowable to other persons must always be resolved against the power.

APPEAL from the Chancery Court of Alcorn County.

Hon. F. A. CRITZ, Chancellor. ,

L. M. New was the owner in fee ,of lot 3, block 51, in Corinth, and J. M. New was the owner of other property. On April 17, 1871, they jointly borrowed from the Tishimingo Savings Institution the sum of $1,000, and gave therefor their joint promissory note payable on December 17, 1871, and bearing interest at the rate of two per cent per month, payable monthly in advance. To secure the payment of this note they executed in favor of the Tishimingo Savings Institution a deed of trust, with J. W. Whitmore, trustee, on said lot 3 and the homestead of J. M. New. The charter of the Tishimingo Savings Institution (Acts 1866–77, p. 469) provides (sect. 4) : " That said company shall be authorized * * * to pay and receive such rate of interest as may be mutually agreed upon by said company with its customers." Sect. 5 provides : " That said company may invest its capital and profits, or any portion thereof, in bonds, notes, bank-notes or silver coin, treasury notes, bullion, bills of exchange, or any other evidence of debt, and change the same at pleasure, and in all meetings of stockholders each share shall entitle the holder to one vote." Sect. 7 declares : " That said company may hold and possess any real estate that may be necessary to carry on their business, or that may be convenient therefor, and also any real estate which they may at any time take in payment of debt, and the said company may by order of its trustees alienate or dispose of the same." The makers paid the interest on this note monthly in advance until its maturity, when they paid the sum of $500, and monthly payments of $10 were also made during the year 1882, from January to November inclusive. On the 18th day of December, 1876, by a sale of the homestead under the deed of trust, $200 more were credited upon the note and deed of trust held by the Tishimingo Savings Institution. On the 9th day of December, 1871, L. M. New conveyed lot 3, block 51, for a valuable consideration to J. F. Waller, who went into posses-

sion.　Soon after Waller purchased the property he entered
into a verbal contract with Lea, Bros. & Co., by the terms ˙of
which they were jointly to erect a building upon the lot, and
when the same was completed each of the parties was to own
of the property an interest in proportion to capital furnished.
When the building was completed it was found that Waller's
interest was three-fifths, and that . of Lea, Bros. & Co. two-
fifths.　Lea, Bros. & Co. went into possession of the property.
On the 14th day of June, 1873, Waller executed a deed of
trust on the whole of lot 3 to secure B. G. McAllister in a
note for $600.　On June 5, 1874, Waller executed another
deed of trust on the same property to secure another note in
favor of McAllister for $400.　In 1876 G. W. Small & Bro.
recovered a judgment against Waller and Lea, Bros. & Co. for
$883 for labor and materials furnished in the erection of the
building on lot 3.　On the 9th day of November, 1876, Lea,
Bros. & Co. were adjudicated bankrupts by the United States
District Court at Oxford, and in their schedule of assets ren-
dered in a two-fifths interest in said lot 3.　On November 17,
1876, Whitmore advertised the lot for sale under the trust-
deed given by the News to the Tishimingo Savings Institution.
A few days before the day of sale an injunction issued from
the bankrupt court at Oxford, at the instance of creditors of
Lea, Bros. & Co., against Waller, A. H. Taylor, president of
the Tishimingo Savings Institution, and Whitmore, to restrain
them from selling.　This injunction was disregarded and the
property was sold, A. H. Taylor becoming the purchaser for
$907.　On the 6th day of January, 1877, J. W. Buchanan,
the appellee, purchased lot 3 from J. F. Waller for the sum
of $750.　On the 9th day of January, 1877, A. J. Yancey,
assignee in bankruptcy of Lea, Bros. & Co., sold at bankrupt
sale the two-fifths interest of the bankrupts in lot 3, and W. R.
Sadler became the purchaser.　On the same day Sadler con-
veyed to Buchanan, the appellee, who immediately went into
possession of the whole property.　Buchanan, the appellee,
then paid the balance due on the judgment in favor of Small

& Bro., which was about to be enforced against the property. On the 30th day of January, 1878, appellee bought the notes and deeds of trust given by Waller to McAllister, which remained unpaid, and took an assignment of them.

On the 11th day of July, 1877, the bankrupt court set aside the sale made by Whitmore, trustee, to Taylor, under the deed of trust. On January 11, 1879, there was a decree in the bankrupt court dismissing the petition upon which the injunction had issued against Whitmore, Taylor and Waller, without prejudice to any of the parties. In April, 1879, A. H. Taylor, without the consent of Buchanan, obtained possession of the lower story of the building on lot 3. After Taylor had thus obtained possession of a portion of the property, the same was again advertised for sale on the 13th day of June, 1879, under the deed of trust given by the News to the Tishimingo Savings Institution on April 17, 1871. On June 12, 1879, this bill was filed by J. W. Buchanan and B. G. McAllister against the Tishimingo Savings Institution, A. H. Taylor, president thereof, J. W. Whitmore, trustee, L. M. New, J. M. New and J. F. Waller, praying for an injunction against them restraining the sale. The injunction was granted. The bill, after stating the above facts, charged that the sale made by Whitmore, trustee, on December 18, 1876, under the New trust-deed, was only pretendedly advertised by posting illegal and badly written notices on the back of the post-office door in Corinth, thereby intending to effect a secret sale of the property in fraud of the creditors of Lea, Bros. & Co., and to defraud B. G. McAllister out of the benefit of his prior deeds of trust, and to defraud B. F. Waller out of his equity of redemption. That on the 18th day of December, 1879 (the day of sale), in answer to an inquiry by Waller as to whether the property would be sold, Taylor responded that it would not, because of the injunction from the bankrupt court. That said sale was attended by only a few of Taylor's friends. That when Buchanan purchased the property from Waller he was in total ignorance of the sale under the trust-

deed, and that the deed from Whitmore, trustee, to Taylor was not on the records until more than a month after the sale, and that it was not recorded at the time of the purchase by Buchanan. That immediately after his purchase from Waller, Buchanan called upon Taylor and tendered him the amount due on the deed of trust, which he refused to accept. The bill further charged that the note given by the News was barred by the six years' Statute of Limitations, or if not barred, that it had been fully paid off and satisfied. The bill prayed that on final hearing the deed from Whitmore to Taylor be cancelled as a cloud upon appellee's title, and that Whitmore and Taylor be perpetually enjoined from selling again under the deed of trust. Taylor answered the bill denying all allegations of fraud, and insisting that the sale under the trust-deed of December 18, 1876, by Whitmore, trustee, to himself was valid. A mass of conflicting testimony was taken on both sides. The chancellor rendered a decree in favor of Buchanan. From this decree the Tishimingo Savings Institution appealed to this court.

*Whitfield & Young*, for the appellant.

1. The power of this bank, under its original charter, to loan money, was adjudicated and sustained by this court in *Tishimingo, etc., Inst.* v. *Mask et al.*, MS. opinion, No. 956.

2. It is well-settled law that where the act is neither *malum in se*, nor *malum prohibitum*, the State alone will be heard to complain of it. It may give ground for the resumption of the franchise by the State, but the borrower will not be permitted to retain the money, and be discharged from payment on a plea of *ultra vires*, except, perhaps, in cases where the transaction was utterly foreign to the purposes of the corporation. *Grand Gulf Bank* v. *Archer*, 8 Smed. & M. 151; *Railroad Co.* v. *McCarthy*, 96 U. S. 258; *Littleworth* v. *Davis*, 50 Miss. 403; *National Bank* v. *Matthews*, 98 U. S. 621; Greene's Brice's Ultra Vires (2d ed.), 729, note.

3. If the debt is valid, the deed of trust to secure it is valid. The power to take a note implies the power to be se-

cured. There is involved, in this case of conveyance to a trustee to be sold when, etc., nothing of that public policy hostile to the accumulation of real estate by corporations. The only case cited in his support by the chancellor, *Matthews* v. *Skinner*, 62 Mo. 329, was appealed to the United States Supreme Court, and reversed under the title of *National Bank* v. *Matthews*, 98 U. S. 621.

4. If the contract does not bear the conventional rate after maturity, why should it bear six per cent? The right to interest exists only when expressly or impliedly promised, or when given by statute; our statute gives interest only on notes, accounts, judgments and contracts. If, as was said in *Halden* v. *Trust Co.*, 100 U. S. 72, the creditor's claim is for damages only after maturity of his debt, the question arises, what interest does the law allow on damages? What compensation shall the creditor have for being delayed of the damages which instantly accrued to him on the breach of the contract? It is believed that this court will hesitate long before announcing a rule rewarding those who default in their promises, and impelling every creditor to put his debt into judgment without delay.

5. The chancellor erred in holding the note to be barred by the Statute of Limitations. Having reasoned the appellant out of his purchase, on the ground that the proceedings in the bankrupt court were valid, the chancellor now reasons him out of his debt, on the ground that the proceedings were void. The note became due, December 17, 1871; the injunction by United States court was granted, December 14, 1876; the injunction was dissolved, January 14, 1879; the bill was filed, June 12, 1879. Add to six years, the period of limitation, three years and one month, the period of injunction, and the result is, nine years, one month. This bill was filed eight years five months and twenty-five days after the debt matured.

*F. E. Whitfield*, of counsel for the appellant, argued the case orally.

*Houston & Reynolds*, for the appellees.

A corporation possesses only those rights and powers which

are expressly conferred upon it, or which are incidental to its very existence.  All grants of powers to corporations are to be construed liberally in favor of the public and strictly in favor of the corporation, and what is not unequivocally granted is taken as withheld.  Any doubt or ambiguity arising out of the terms employed in granting power to a corporation must be resolved in favor of the people.  36 Ala. 313 ; 31 Ala. 552. We contend that the lending of money was outside of the purposes for which this corporation was created.  If a corporation, without authority, lends money, it cannot recover on the contract because it is void, nor can it recover on the money counts or for money had and received.  *Grand Lodge of Ala.* v. *Waddell,* 36 Ala. 313 ; *Smith* v. *Alabama Life Ins. Co.,* 4 Ala. 558, and authorities cited.

This trustee's sale was void for the following reasons : —

1. Because the evidence shows that it was a fraudulent scheme to enable Taylor to purchase the property at less than its value, and thus defeat the other junior encumbrances on the property.  The advertisements of the sale were illegibly written and not conspicuously posted.  The charter was granted under the Constitution of 1832, which forbids an exclusive privilege, etc., except for services, etc.  Code 1857, p. 23, sect. 1. *Simonton* v. *Lanier,* 71 N. C. 498.  But if the provision in the charter is constitutional, it does not authorize a higher rate of interest than the legal rate.  71 N. C. 498.  The authorities are in conflict, but the weight of authority and reason favor the principle, that the note bears interest at the specified rate to maturity, and after that at the legal rate. The note was barred unless the injunction issued by the bankrupt court prevents the running of the statute, and we admit that it does as long as Taylor's hands were held by it, and he prevented from selling.  The interest is not to be calculated from the maturity of the note to the present time, but to the 9th of January, 1877, when Buchanan, as proven by himself and Potts, tendered to Taylor the amount that was due, which tender Taylor waived, telling Buchanan that he need not make

it, he would not receive it. As to the effect of the tender, see *Harmon* v. *Mage*, ——.

*R. O. Reynolds*, of counsel for the appellees, argued the case orally.

*J. W. Buchanan, pro se*, filed an elaborate brief on the facts of the case.

*C. E. Stanley*, on the same side.

1. The Tishimingo Savings Institution had no authority to loan money and secure its payment by taking a deed of trust, and the contract made in loaning the money to the News is void and cannot be enforced. *Penn. & Del. Canal Co.* v. *Dendridger*, 8 Gill & J. 248; *Hood* v. *New York & New Haven R. R. Co.*, 22 Conn. 502; 23 Conn. 457; 24 Conn. 159; *Bank of Michigan* v. *Niles*, 1 Dougl. (Mich.) 401; *Raut* v. *Goddard*, 3 McLean, 102; *Dodge* v. *Woolsey*, 18 How., 331.

2. Even if the appellant had the power to loan money and take the deed of trust, the result must be the same, because the sale by Whitmore to Taylor under the trust deed is void for fraud.

3. The note is barred by the Statute of Limitations, of six years, because the sale under the trust was vacated on July 11, 1877, and Taylor was at liberty to proceed as though no injunction had been sued out.

4. The charter of the appellant must be construed as author izing it to charge interest at a rate to be agreed upon within the limits prescribed by law, and this construction is supported both by reason and authority. *Simonton* v. *Lanier*, 71 N. C. 498.

5. Until maturity the note bears interest at the conventional rate, and after maturity at the legal rate. 10 R. I. 223; 22 How. 118; 22 Wall. C. Ct. 170; 42 Conn. 570; 31 Ark. 626; 23 Minn. 84; 14 Ala. 233; 10 S. C. 133.

CAMPBELL, C. J., delivered the opinion of the court.

The appellant was authorized by its charter to loan money,

and secure it by taking a deed of trust on land. The note of the Messrs. New to the appellant was not barred by the Statute of Limitations at the commencement of this suit.

The sale under the deed of trust to the appellant, and the purchase by A. H. Taylor, if not vacated by the decree of the District Court of the United States at Oxford, should be set aside because of the circumstances attending it, and the appellant should stand as a creditor holding the note secured by the deed of trust, to the extent that the note has not been paid. Interest should be computed on said note at ten per cent, unaffected by the tender by Buchanan ; an account should be taken of the rents and profits of the property in controversy, and a decree be made for the payment out of the property covered by the deed of trust of any sum due the appellant, and the remainder devoted to Buchanan.

This is the result of a very careful consideration of the questions presented by this case, and we deem it unnecessary to elaborate the views, conducting to it. We repudiate the doctrine that a tender of the sum due discharges the lien of a mortgage or deed of trust. There was a reason for such doctrine when a mortgage was an absolute conveyance of the estate, if the debt was not paid according to its terms ; but it is without any sensible foundation in the present view of mortgages as mere securities for debts. And we think Buchanan's tender of the money did not stop interest on the debt, because he has since assailed the validity of the claim, and sought to have it cancelled because of alleged nullity. It is true he declares his readiness to pay what may be legally due on it, but he asserts there is nothing due, and this is inconsistent with a tender.

The continuance of interest until payment is vindicated by our opinion in *Meaders* v. *Gray*, *ante* p. 400.

The denial of the right of appellant to two per cent a month, as stipulated in the note, is founded in the view that the right to " receive such rate of interest as may be mutually agreed upon by said company with its customers " was not intended to

confer on the appellant the exclusive privilege of charging a rate of interest which it was unlawful for others to receive. If the language of the charter as to interest can be reconciled with the general law of the land on the subject of interest, it must be assumed that the legislative intent was to confer the right to agree for interest, within the limits prescribed by the law for all. A doubt whether the Legislature intended to confer upon a corporation power to bargain for interest not allowable to others must always be resolved against the power, and it cannot be affirmed of the charter of appellant that it was the unmistakable purpose of the Legislature to confer this power. *Simonton* v. *Lanier*, 71 N. C. 498.

Decree reversed, and cause remanded for proceedings in accordance with this opinion.