Spear, J.
1. The first question is as to the sufficiency of the plea of the statute of limitations.
The original assessments were made by virtue of the act referred to as the two mile free turnpike road law, October, 1870, and ordered placed upon the special duplicate, payable in ten equal semi-annual installments, the first, $55.00 in amount, coming due December, 1870.. There then existed a provision of statute, (section 38 of the general tax law of 1859), which, in case of delinquent taxes on personalty, required the clerk of the court of common pleas, on application of the treasurer, to serve a notice on the delinquent to show cause why he should (,not pay such taxes, and if he failed to show sufficient cause, the court at the next term could enter a rule against him for the taxes and costs, having the force and effect of a judgment at law, and to be enforced by attachment against the person, or by execution, or *202 such process as the court might direct. If this statute could be held to apply to assessments, which is at least doubtful, it authorized only a special proceeding, and not a civil action, within the meaning of the statute of limitations. It could not, therefore, affect the present case. And there was not, until the act of February 18, 1875, (72 Ohio Taws 37), to which the act of April 11, 1876, is an amendment, any authority for a suit similar to the present one. Plaintiff’s action was, therefore, founded upon the last named act, in which it is provided “ That whenever any taxes or assessments, heretofore or hereafter levied or assessed, shall stand charged against any lands or lots, or parcels thereof, upon the tax duplicate or special duplicate of any county 'of this state, for state, county, city, or any other purposes, and the same shall not be paid within the time prescribed by law for the payment of such taxes and assessments, the treasurer of such county, in addition to any other remedy provided by law, for the collection of such taxes and assessments, is hereby specially authorized and empowered to enforce the lien of such taxes and assessments upon said property, by commencing in any of the courts of this state having jurisdiction of the subject matter, a civil action in the name of such treasurer, to subject a sufficient amount of such realty to the payment of such taxes and assessments; and it shall be sufficient, having made proper parties to the suit, for such treasurer to allege in his petition that the said taxes and assessments stand charged upon the said duplicate of said county against said lands, the amount thereof appearing to be due and unpaid thereon, and that the same is due and unpaid.”
It was alleged in the petition that the auditor had placed in the hands of the plaintiff for collection, the special duplicate for the year 1881, for the construction of the Ripley and Arnheim free turnpike road; that upon it there stood charged against the person, and against 220 acres of the lands of the defendant therein described, an assessment for $328.12, with interest from December 20, 1881; that the same was due and unpaid, although the time prescribed by law for its payment had elapsed; that the same was a lien *203 upon the lands, and praying an'order that, in default of payment of the amount found due, the lands be ordered sold.
Defendant’s plea was that the action accrued in favor of plaintiff, if at all, more than six years next before the Commencement of the same, and the filing of the petition and supplemental petition. And, in support of this, it is insisted that the case was covered by section 4981, Revised Statutes, which provides that “ An action upon a liability created by statute, other than a forfeiture or penalty, shall be brought within six years after the cause of action accrued.”
Plaintiff’s cause of action being given by the statute of February 18, 1875, no question is made but that, if the statute applies, and that if defendant can avail himself of it, the effect will be to defeat plaintiff’s action, inasmuch as the original petition was filed more than six years after the passage of the act. And, if section 4981 applies to an assessment, and can be pleaded against the county, the statute is a bar unless, because of' facts stated in the reply, the plaintiff’s case is saved from its operation.
Whether or not an assessment is “a liability created by statute, other than a forfeiture or penalty,” and whether the bar. of the statute can be maintained against the county, we do not here determine. Passing that, the question is whether or not a party may be permitted to set up the bar of the statute of limitations as a defense to an action the commencement of which he has wrongfully procured to be restrained until sufficient time has elapsed to render such a defense available at law?
That a party should be accorded the full legal effect of such plea is maintained upon the ground that to refuse to recognize and enforce such right is to engraft an exception upon the statute of limitations which the legislature has not placed there. And this is sustained by several decisions, and the opinions of some text writers.
Now, it may be freely conceded that the statute of limitations, where applicable, is a meritorious defense, and one which may be pleaded in equity as well as at law. Nor will a court of equity, where the demand is of' a legal nature, re *204 fuse to recognize such, defense, nor to enforce it where fairly ' obtained. So, if from the laches of the other party, the defense has arisen, its sufficiency appeals as well to a court of equity as to a court of law. But a party has not the right, under every and all circumstances, to take advantage of the statute. A variety of cases will be found in which courts of equity have refused to allow the application of the statutory bar. Hanger v. Abbott, 6 Wall. 532, is an example. Plaintiffs action could not be brought within the statutory time because, by reason of the rebellion, he could not sue in the state courts, and the court held that the plaintiff, having been without fault of his own, disabled by a superior power, from the capacity to sue, could not be affected by the statute. U. S. v. Wiley, 11 Wall. 508, is another instance. It is remarked by Mr. Justice Strong in that case that statntes of limitations “are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away. In such a case the creditor has not the time within which to bring his suit that the statute contemplated he should have.” Another exception to the general rule is that there must be in existence both some one who can sue, and some one who can be sued, as shown by the familiar rule that where an action accrues to the estate of a deceased person, the statute does not begin to run until the qualification of a personal representative. Angell on Lim. Ch. 7; Montgomery v. Hernandez, 12 Wheat. 129; Marsteller v. Marsteller, (Penna.) 10 Rep. 440; Sarrells v. Trantham, (Ark.) 24 Rep. 297; Murray v. East India Co., 5 B. & Ald. 204; 13 Am. & Eng. Ency. of Law, 737, and cases cited.
And, while in proper cases, as suggested above, courts of equity will apply the statute, or act in analogy to it, yet it is a familiar principle of equity that a party may not be permitted to insist upon an unconscientious advantage acquired over his adversary. It will not be doubted, we suppose that where one wrongfully obtains an injunction and con *205 tinues it in force, to the detriment of his opponent, he has taken an unfair advantage. It is said by Mr. Justice Story (2 Equity, 849), “if a party should apply to a court of equity and carry on an unfounded litigation, protracted under circumstances and for a length of time which should deprive his adversary of his right to proceed at law on account of the statute of' limitations having in the intermediate time run against it, courts of equity would themselves supply and administer within their own jurisdiction a substitute for that original legal right of which the party had been thus deprived, and by their decree give him the fullest benefit of it.” And to like effect are many other authorities. Little v. Price, 1 Md. Ch. 182; Williams v. Pouns, 5 Rep. 82; Moore v. Crockett, 10 Humph. 365; Sugg v. Thrasher, 30 Miss. 135; Wilkinson v. Flowers, 37 Miss. 579; Savings Inst. v. Buchanan, 60 Miss. 496; 13 Am. & Eng. Ency. of Law, 719.
It seems reasonable to conclude that it would be against conscience for a party to maintain a plea of the statute against an adversary, who, by his procurement, has been enjoined from prosecuting his suit. A court of equity may, and we think, when applied to, should, interpose the same instrument to prevent such injustice as the party himself has used to obtain an unfair advantage against his opponent. No man should be permitted to take advantage of his own wrong. And what a court of equity might do upon a direct application by bill for the purpose, it may do where the facts are shown by reply to a plea of the statute by a defendant.
In this case there appears no laches on the part of plaintiff. He refrained from prosecuting his remedy because such was the order of the court, procured by the defendant, and continued in force during the time he was prosecuting a fruitless litigation in the courts of the county and in this court. The delay complained of was the result of the wrongful act of the defendant himself, for which the plaintiff was in no way responsible, and it now comes with an ill grace for the unsuccessful party in that litigation to insist that the observance by plaintiff of that order of injunction, *206 and his obedience to it, shall work a defeat of his right of action because of such delay.
It is insisted that the plaintiff might, at any time, have applied to the court for a modification of the order so as to permit the commencement of suit and service of process, and not to have done that is of itself laches. We do not think so. The court’s solemn fiat had gone forth forbidding the commencement of any such action, and to ask that court to set aside that order so that plaintiff might go through the fruitless motions of placing a petition upon the files, and obtaining service of summons, and thereafter go through the ceremony of responding “continued” at each call of the docket during the pendency of the injunction suit, would seem like an application for leave to do a succession of vain things.
The case of Tucker v. Shade, 25 Ohio St. 355, is cited as supporting the contention of defendant. In that case the question was whether or not, as between a creditor and the owner of land by purchase from the judgment debtor, the lien of a levy of execution would continue to operate after the period of five years, where the creditor had been enjoined at suit of one who was surety in the judgment from issuing a second execution, and the purchaser bought, took conveyance, and paid the purchase money, without actual notice of the alleged lien. The holding, in substance, was. that inasmuch as the purchaser was not a party to the suit in which the injunction was allowed, and inasmuch as-there was no reference to the property in controversy, nor any right to it set up in that suit, the controversy being only as to the. discharge of the alleged surety from liability on the judgment, the suit operated only on the parties personally, and the lien was not prolonged beyond the five years, as against the purchaser. It is apparent that we have a different case.
At the time the plaintiff’s cause of action arose he could not commence suit upon it because of defendant’s injunction. That disability continued until the judgment dissolving the injunction by this court at its December term, 1876, in fact rendered May 8, 1877. Within six years after- *207 that judgment he commenced the present action, and our conclusion is that in equity and good conscience the defendant should not be permitted to insist upon the bar of the statute of limitations as applied to the time during which the plaintiff was enjoined from commencing his action.
2. The demurrer also challenges the validity of the act of May 6, 1878.
This act is open to verbal criticism, but we do not see that there is any serious fault to be found with it. The law is intended to operate upon a then existing condition of things in Brown county. A burdensome charge had been laid on lauds presumably benefited by the improvement. Many of the assessments had not been paid. By virtue of the act the commissioners were authorized to reduce the total burden from a sum based upon a cost of $7,250 per mile, to a sum based upon a rate of $4,000 per mile; to refund to such as had paid assessments based upon the first named rate an amount sufficient to equalize the burden, and to levy upon the taxable property of the county for the residue. They then might, as a substitute for the original assessments remaining unpaid, levy specially upon the same lands according to the reduced rate, and extend payment of such special tax or assessments, so that they would be paid in twelve equal semi-annual installments. This scheme does not seem to be unfair; at least not to those liable for such assessments.
As we have already found, the statute of limitations had not, at the enactment of this Statute, run against any of the assessments made upon the lands of defendant, and, the bar not being complete, the defendant could have -no vested right in the former statute of limitations, whatever that may have been. If any one could justly complain of this statute it would seem to be the general tax-payer, and not one 4who was benefitted by its provisions.
But, aside from this, the defendant is in no position to question the statute. The allegations of the reply show that he, with others, procured the action of the legislature in that behalf. It is a local measure, for their special benefit, and, after having invoked, the action of the law-making *208 power for their relief, they cannot, upon well established principles, be heard to assert a want of power to give what they procured to be given. The State v. Mitchell, 31 Ohio St. 592; Tone v. Columbus, 39 Ohio St. 281.
The judgment of the circuit court will be reversed, the demurrer ordered overruled, and the cause remanded for further proceedings, in accordance with this opinion.
Reversed.