## THE STATE OF MARYLAND vs. THE GERMAN SAVINGS BANK OF CUMBERLAND.

*Statute Invalid Because Title Misleading Under Constitution Art. 3, sec.*
*29—Franchise Tax on Savings Banks—Act of 1898, ch. 266, relat-*
*ing to the German Savings Bank of Cumberland.*

The title of the Act of 1904, ch. 212 is: "An Act to add an additional section to Article 81 of the Code of Public General Laws title 'Revenue and Taxes,' sub-title 'Payment of taxes by corporations,' to follow sec. 81A and be designated as section 81B." The body of the Act provided that sec. 86 of Code, Art. 81 which imposes a franchise tax on savings banks shall not apply to or affect any savings bank which has a capital stock of $20,000 or over, subject to taxation under the laws of the State and which merely receives time deposits at a fixed rate and not weekly and monthly deposits. At the time of the passage of the Act there was no sec. 81A of Art. 81 of the Code in existence, and sec. 81 of that Article relates to the failure of a collector of taxes to account for the same.

Md.]                    Opinion of the Court.

*Held,* that the title of the Act of 1904, ch. 212, is misleading and the Act is invalid because in violation of Constitution, Art. 3, sec. 29, which directs that every law enacted by the General Assembly shall embrace but one subject and, that shall be described in the title.

The Act of 1898, ch. 266, authorized the German Savings Bank of Cumberland to receive money on deposit and pay interest thereon and to do and transact a general banking business, and also provided that the bank should be subject to the law regulating guaranty companies.  In an action by the State to recover the franchise tax imposed by Code, Art. 81, sec. 86, on savings banks, the German Savings Bank pleaded that since the passage of the Act of 1898 it has conducted a general banking business and has not received weekly or monthly deposits or deposits at any regular interval or in regular amounts but received deposits in any amount and at any time and paid a fixed rate of interest of three per cent upon deposits to the credit of accounts standing six months or longer but paid interest on no other accounts and that all of its deposits were subject to check at any time.    *Held,* that notwithstanding a certain ambiguity in the provisions of the Act of 1898, it did authorize the defendant to transact a general banking business, and since the plea sets up a substantial defense to the action a demurrer to it was properly overruled.

*Held,* further, that if the defendant bank still carried on substantially the business of a savings bank the mere fact that under its enlarged powers it did other banking would not relieve it from liability for the franchise tax imposed on the deposits of savings banks, but it would not be liable for that tax if, since the Act, it has conducted a general banking business, although it allows interest on deposit accounts of over six months standing.

· Appeal from the Circuit Court for Allegany County.

The cause was argued before McSherry, C. J., Briscoe, Page, Pearce, Schmucker, Jones and Burke, JJ.

*Ferdinand Williams,* for the appellant.

*Albert A. Doub* (with whom was *James A. McHenry* on the brief ), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The State of Maryland sued the appellee in this case to recover the franchise tax, on the deposits held by it on January 1st, 1904, claimed to be due under sec. 86 of Art. 81 of the Code of 1888.

The declaration alleges that prior to and during the year 1904 the defendant was a savings bank duly incorporated and organized for receiving deposits of money and paying interest thereon and that it operated and carried on the general business of a savings bank in the city of Cumberland; that it reported, through its proper officer, to the State Tax Commissioner on or before May 1st, 1904, that on the first day of January in that year it held deposits to the amount of $732,574.67, but it failed to pay to the State Treasurer, as it was required to do by sec. 86 of Art. 81, the franchise tax of one-fourth of one per cent on its said deposits. The further allegation is made that on or before the first day of June, 1904, the State Tax Commissioner calculated the sum of $457.85 to be the amount of the franchise tax, due by the defendant, and certified it for collection to the Comptroller who notified the defendant of the said apportionment and levy against it according to law whereby it became the duty of the defendant to pay the tax on or before the 1st day November, 1904, and upon its failure to make the payment it became liable to the State for a penalty of five per cent amounting to $22.89 making a total indebtedness of $480.74 for the recovery of which the suit was brought.

The appellee as defendant demurred to the declaration but after a hearing of the demurrer it was overruled.

The defendant then filed a plea in the case, averring that it was not, at the time in the declaration alleged, a savings bank but had from long prior to January 1st, 1904, been an ordinary State bank with a paid up capital of $100,000, upon which it had duly paid the State taxes for the years 1904 and 1905; that it had been duly authorized to carry on a general banking business by the Act of 1898, ch. 266, which is set out at length in the plea; that since the passage of that Act it had not conducted a banking business for receiving deposits and paying interest thereon but had done a general banking business and had not received and does not receive weekly or monthly deposits or deposits at any regular interval or in regular amounts but receives deposits in any amount and at any

time and pays a fixed rate of three per cent upon deposits to
the credit of accounts standing six months or longer but pays
no interst on other deposits and that all deposits with it are
subject to check at any time.   The plea further alleges that
the defendant also discounts negotiable paper, lends money on
real or personal security and transacts its business in the same
manner as all other ordinary commercial State banks and that
its deposits are not subject to the franchise tax imposed on
savings banks by sec. 86 of Art. 81 of the Code.

The State demurred to this plea, and, its demurrer having
been overruled, it declined to reply whereupon a judgment on
rule replication was entered for the defendant, from which the
present appeal was taken.

The appellee both in the Court below and in this Court re-
lied, in support of its demurrer to the declaration, upon the
Act of 1904, ch. 212, it being conceded by both parties to the
suit that if that Act be valid the declaration is bad but if the
Act be invalid the declaration is good.   The Act provides
that sec. 86 of Art. 81 of the Code, imposing the franchise
tax on savings banks, shall not "apply to or in any manner
affect any savings bank, institution or corporation which has a
capital stock of $20,000, or over subject to taxation under the
laws of this State and which merely receive time deposits at a
fixed rate but do not receive weekly and monthly deposits."
It is admitted that the appellee has a capital stock of
$100,000.

The State insists that the Act of 1904 is unconstitutional,
first, because its title is defective and secondly because it pro-
vides an unequal and unfair rate of taxation of savings banks
with different amounts of capital stock.

The title of the Act is "An Act to add an additional section
to Article 81 of the Code of Public General Laws of Mary-
land, title 'Revenue and Taxes,' sub-title 'Payment of Taxes
by Corporations,' to follow sec. 81A and be designated as
sec. 81B."   The body of the Act then enacts the additional
section already mentioned "to follow section 86A, and to be
known as section 86B."   There was in fact at the date of the

passage of the Act of 1904 no section 81 A. in the Article. There was at that time a section 81 but it did not have relation to the franchise tax on the deposits of savings banks so that if any person had looked at that section to ascertain the purpose of the Act he would have been misled. We have then before us the question of the validity of an attempt to declare inoperative, as to a large number of corporations, the provisions of an important section of the Code by an Act whose title neither indicates its contents nor correctly mentions the section of the Code to be affected by it. Does this title gratify the requirements of sec. 29 of Art. 3 of the Constitution of this State?

We have repeatedly had occasion to consider and pass upon the purpose and operation of this section of the fundamental law of the State. In the very recent case of *Kafka* v. *Wilkinson*, 99 Md. 238, we said in referring to the frequency with which it had been before us in reference to its application to Acts of the Legislature, "It has received a liberal construction and the Courts have been reluctant in any case to give it an operation that would defeat the legislative intent. Yet they have not hesitated to strike down legislative Acts that were clear infractions of its purpose and object. These have been declared to be two-fold; the *first* is to prevent the combination in one Act of several distinct and incongruous subjects, and the *second* is that the Legislature and the people of the State may be fairly advised of the real nature of impending legislation. It would seem that if the object of the constitutional provisions in question is to be respected and is to have meaning and effect in controlling legislation, the considerations which have just been mentioned must have a controlling effect in applying it."

The Act now under consideration, fails in our opinion to gratify the second of the two constitutional purposes referred to in the last-mentioned case in that its title does not fairly advise the Legislature and the people of the real nature of the legislation sought to be accomplished by the passage of the Act.

If the title had stopped with the designation of the Article, title and sub-title to which the additional section was to be added we would have been authorized to hold it sufficient under the rulings in *State* v. *Norris*, 70 Md. 94; *Lankford* v. *Co. Commrs.*, 73 Md. 118; *Second German Am. Bldg. Assn.* v. *Newman*, 50 Md. 62 and *Garrison* v. *Hill*, 81 Md. 551. But the title goes further and locates the new section to be enacted as a sub-section of No. 81 to follow 81A, and be designated as 81B. As there was at the date of the passage of that Act no section 81A, in Article 81, and section 81 of that Article related to the failure of any collector of county or city taxes to account for taxes collected by him, a subject wholly foreign to the purpose of the new section to be enacted that reference in the title tended to create a false impression as to the purpose of the Act. As was said in *Stiefel* v. *Md. Inst. for the Instruction of the Blind*, 61 Md. 148, "Publicity and a knowledge of the true effect and operation of every bill brought before the Legislature are the great safeguards against ill-considered and improper legislation. The provision in question is one among many others in the Constitution designed to promote those objects. Bills are sometimes read, especially the first time, by their titles only and the titles only are spread upon the journal. It is therefore important that the title to the bill should never be misleading and that at least a general idea of the purport of the law may be gathered from it."

In our opinion the title to the Act now under consideration was so misleading as to be obnoxious to sec. 29 of Art. 3 of the Constitution and the Act was therefore void and the demurrer to the declaration was properly overruled.

The defendant in the attempt to uphold the validity of the Act of 1904 relied especially upon the case of *Strauss* v. *Heiss*, 48 Md. 296, in which ch. 471 of the Acts of 1868, that enacted the general corporation law of the State, was held valid although its title, in addition to other matters, purported to repeal secs. 99–103 of Art. 16 of the Code which sections relate to chancery proceedings and have no reference to corporations. What the Court held in that case was simply that a

whole law otherwise constitutional would not be rendered void by the introduction of a single foreign element. The Act under consideration in that case had been prepared and reported to the Legislature by a commission appointed for that purpose, and it contained no less than two hundred and nineteen sections all relating to the formation and government of corporations and the rights and liabilities of parties incident thereto. The Court in defining its position in that case say: "It is obvious from the examination of the Act itself in connection with the report made by the commissioners who framed the law and who were appointed for that purpose by the Governor in pursuance of the requirements of the Constitution of 1867 that secs. 99–103 intended to have been named in the title are secs. 99–103 of Art. 75 which will be found to relate to incorporations and to be embodied with amendments in the Act of 1868. But be that as it may the mere fact that part of the title of an Act refers to a subject-matter foreign to and inconsistent with other parts of the title, and which finds no corresponding provision in the body of the law, would not in itself render the Act invalid. In such a case so much of the title as was repugnant to and inconsistent with the Act would be rejected as mere surplusage."

The action of the Court in holding the Act of 1868, ch. 471, valid under the circumstances set forth in their opinion can furnish no just support for the defendant in asserting the sufficiency of the title to the Act now under consideration which relates to a single subject, and contains but one section which is erroneously described in the title. Having held the present Act to be invalid by reason of its defective title it is unnecessary to consider what would have been its operation if it had been validly enacted.

We will now consider the action of the Circuit Court in overruling the demurrer filed to the defendant's plea. The defense intended to be set up by the plea was that the defendant, during the period for which the franchise tax was claimed, was not a *savings bank, institution or corporation organized for receiving deposits and paying interest thereon.* That was a

meritorious and substantial defense which if properly pleaded and established by evidence would have defeated the action, for it was only upon such corporations that sec. 86 of Art. 81 of the Code imposed the franchise tax sought to be recovered by the suit.    The plea distinctly avers that "the defendant is not and has not been since a long time prior to the 1st day of January, 1904, a savings bank institution or corporation organized for receiving deposits and paying interest thereon." The further statement in the plea contained, that during the period of time aforesaid the defendant had been an ordinary State bank with a paid up capital of $100,000 on which it duly paid its taxes to the State for the years 1904 and 1905, was not inconsistent with the first averment but was merely an amplification thereof.

The Act of 1898, ch. 266, set out in the plea as the authority under which the defendant carried on its general banking business, is not very skillfully drawn nor in all respects consistent in its terms.    That Act describes the defendant as a savings bank and recites that it has ever since its organization conducted a savings bank in the city of Cumberland but that it desires to have its corporate powers increased and enlarged so as to enable it to conduct a general banking business.    It is then authorized and empowered by the Act "to borrow money, *receive money on deposit and pay interest thereon,*" to lend money on real or personal security, discount, buy or sell commercial paper, &c., &c., and "*to do and transact a general banking business.*"    The Act by its next section, rather singularly, provides that the defendant shall be subject to the provisions of ch. 109 of the Acts of 1892 as amended by ch. 160 of the Acts of 1896, which relate neither to savings banks nor to banks transacting a general business but to security and guarantee companies.    Despite the ambiguity and inconsistency in the provisions of this Act it certainly furnished the defendant adequate authority to thereafter transact a general banking business.

The plea concludes with the statement that since the passage of the Act of 1898 the defendant has conducted a gen-

eral banking business and not a banking business for receiving deposits and paying interest thereon and has not received *"weekly or monthly deposits or deposits at any regular interval or in regular amounts but received deposits in any amount and at any time"* and paid *"a fixed rate of interest of three per cent upon deposit to the credit of accounts standing six months or longer"* but paid interest on no other deposits and that all of its deposits were subject to check at any time.

Tested by the strict rules of pleading as applied to actions at law this plea may be open to 'the objections of ambiguity and inconsistency but as those defects are matters of form and the plea, in definitely asserting that since the passage of the Act of 1898 the defendant has not conducted a savings bank institution or corporation for receiving deposits and paying interest thereon, sets up a defense sufficient in substance to the action, the Circuit Court committed no error in overruling the demurrer to the plea and entering the judgment appealed from after the State had declined to reply further. Secs. 6 and 7 of Art. 75 of Code. *Poe on Pleading*, sec. 557.

If the State had joined issue on the plea and gone to trial the fact as to whether the defendant was or was not conducting a savings bank would have been determined from what the evidence showed to be the real nature of the transactions of which its business was made up. The character of a banking or other institution depends not upon its name or title but upon the nature of the business conducted by it or the enterprises in which it is engaged.

Banking institutions have generally received a three-fold classification, *i. e.*, of deposit, of discount and of circulation. *Duncan* v. *Maryland Savings Bank*, 10 G. & J. 299; *United German Bank* v. *Katz*, 57 M. 128; *Oulton* v. *German Savings Society*, 84 U. S. 109; 5 *Cyc.* 432. It has however come to be not unusual for the same institution to exercise two or even all three of these functions at the same time. In some cases this is done through the agency of separate departments of the institution. In other cases there is no such subdivision of the activities of the organization.

It is a matter of common knowledge that banks of discount and circulation have in recent times been driven by the competition of other financial institutions to allow interest, on some portion of the deposits received by them, to so great an extent that the practice has become almost universal, but such banks have not been regarded as thereby bringing themselves under the operation of the laws passed for the regulation of savings banks.    In some of the States savings banks are permitted to discount and purchase commercial paper without thereby becoming banks of discount.    *Pape* v. *Capital Bank*, 20 Kan. 440; *Tishimingo Savings Inst.* v. *Buchanan*, 60 Miss. 496; *Aul, Savings Bank* v. *Lexington*, 74 Mo. 104.    But, under the decision this Court in *German Bank* v. *Katz, supra,* the appellee, which was incorporated as a savings bank under the general laws of this State, would have been prohibited from discounting commercial paper if its powers had not been enlarged by the Act of 1898, ch. 266.

As banks of discount and circulation are not mentioned in sec. 86 of Art. 81 of the Code, by which the franchise tax now under consideration is imposed, and the taxation of banks of that description is provided for and regulated by other sections of the Code, if the defendant had in fact on January 1st, 1904, ceased to be a savings bank and had become an ordinary State bank of discount, there being now no State banks of circulation, the State is not entitled to recover in this case. As the appellee was for some years a savings bank and conducted a savings bank business, if it still carried on substantially the same business the mere fact that under its enlarged powers it incidentally or collaterally did some other banking would not relieve the deposits received in connection with its savings bank business from liability to the franchise tax.    If on the other hand the business carried on by the appellee since and prior to 1904 has been and is a general banking business the mere fact that it allows interest on deposit accounts of over six months standing would not reconvert it into a savings bank and make its deposits liable to the franchise tax.    The true character of the appellee's business can only be determined

upon proof of the nature of the transactions of which that business consists. It cannot be finally determined upon the issue made by the demurrer to the plea.

The judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided March 28th, 1906.)