# THE STATE OF MARYLAND *vs.* THE CENTRAL TRUST COMPANY.

### *Franchise Tax on Gross Receipts of Trust Companies.*

The Central Trust Co. was authorized by its charter to execute all manner of trusts, to receive articles for safe keeping, to deal in all kinds of property, to serve as executor or receiver. to guarantee investments and obligations, etc.   Code, Art. 81, sec. 164, imposes an annual franchise tax of two per cent upon the gross receipts or earnings of every safe deposit, trust, guarantee and fidelity company incorporated under any law of this State and doing business therein.   By section 165 of said Article, every such corporation is required to make an annual report to the State Tax Commissioner showing its total receipts accruing from business done in this State for the year, and the commissioner is directed to calculate the amount of the tax due by the corporation on its gross receipts and transmit it to the Comptroller for collection.   *Held,* that the Central Co. is a safe deposit, trust and guarantee company within the meaning of the statute; that the company is liable for the franchise tax upon all of its annual earnings no matter from what source they were derived, and that the profits of the company derived from carrying on business other than that of a trust, guaranty or fidelity company are neither exempt from taxation nor liable to taxation at a different rate.

In an action by the State to recover the tax on the gross receipts of said trust company for three years, a detailed statement of the sources from which the receipts were derived is not admissible in evidence, since the company is liable for the tax on its entire earnings from all sources.

Money received by said trust company for its services as trustee under a mortgage of land in another State executed by a mortgagor there resident, is not to be regarded as received from business done in this State and is not subject to the franchise tax.

Interest paid by a trust company on deposits is an item of the expense of conducting its business.

A trust company which has failed to pay the franchise tax on its gross receipts when due is liable for the same with interest and for the penalty of five per cent on its receipts which is imposed by Code Art. 81.

*Decided June 25th, 1907.*

Cross appeals from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*William S. Bryan Jr., Attorney General, Alonzo L. Miles* and *German H. H. Emory,* for the State.

*Arthur Geo. Brown, Edgar H. Gans* and *Stuart S. Janney* (with whom were *C. I. T. Gould* and *A. C. Ritchie* on the brief), for the Central Trust Company.

SCHMUCKER J., delivered the opinion of the Court.

The cross appeals in this case are from a judgment of the Court of Common Pleas of Baltimore City in favor of the State of Maryland against the Central Trust Company of Maryland. The suit was brought by the State to recover from the Trust Company the taxes due by it, under secs. 164 to 171 of Art. 81 of the Code of 1904, on its gross receipts for the years 1893, 1894 and 1895. The case was tried before the Court without a jury and the trial resulted in a verdict and judgment for the State for a sum less than that claimed by it, and both parties appealed.

There is no dispute as to the facts of the case. They appear from agreements of the parties and documentary evidence contained in the record, although there is an exception, to be hereafter noticed, to the admissibility in evidence of certain facts which were admitted subject to exception.

The Trust Company was originally incorporated by the Act of 1898, ch. 369, under the name of The Old Line Real Estate and Trust Company. Under that charter it was granted very broad powers including the power to receive money on deposit, to receive other articles for storage and safe keeping, to act as agents for all persons or corporations engaged in the purchase, mortgage or sale of real estate, to deal for its own account in all description of property real, personal or mixed, to execute all manner of trusts, to serve as executor, administrator, guardian, receiver, trustee or committee either under appointment of Court or act of any person, to guarantee

the validity of titles, the security of investments and the payment of obligations and to take, have, hold, sell grant, mortgage, lease and dispose of at its pleasure all property of every kind real personal and mixed obtained by the investment of its capital or which might come to its hands in the course of its dealings.

By chapter 63 of the Acts of 1900 the charter of the company was amended and its name changed to "The Central Real Estate and Trust Company of Maryland" and it was by that name authorized to enjoy all the rights and exercise all the powers and functions conferred on it by its original charter and also certain additional powers relating chiefly to the improvement and development of real estate and the issuing and handling of debentures and obligations in that connection. By chapter 366 of the Acts of 1902 its charter was again amended so as to change its name to "The Central Trust Company of Maryland" but no further change was made in its corporate powers.    The company organized under its original charter in March, 1899, and has since then maintained its corporate existence and carried on business with its office in Baltimore City.

By sec. 164 of Art. 81 of the Code, a State tax, as a franchise tax, is levied annually upon the gross receipts of certain specified classes of corporations doing business in this State. In one of the classes are included safe deposit, trust, guarantee and fidelity companies on which the tax is fixed at two per centum annually "upon the gross receipts or earnings." Sec. 165 requires every corporation liable to the gross receipts tax to make an annual report to the State Tax Commissioner "showing its total receipts or revenues accruing from business done in this State for the year ending on the preceding thirty · first day of January" and makes it the duty of the commissioner "to calculate the State tax due from such corporation or company on its gross receipts or revenues aforesaid for such year."    Other sections of Art. 81 authorize an appeal by the corporation to the Comptroller and Treasurer from the ascertainment by the Tax Commissioner of the amount of the tax

due by it and further provide that if there be no appeal within a specified time the ascertainment and assessment shall be final and also impose a penalty of five per cent of the gross receipts for a failure to pay the tax.  It is not necessary to state the contents of those sections in detail because it is admitted by the record that the several steps required by law to be taken in levying the tax imposed by sec. 164 upon corporations liable thereto were taken in the present case.

The defendant on its brief admits "that it is liable to the tax on its gross receipts or earnings from the exercise of any franchise it may have to do any of the particular sorts of business specified in the Act, but denies that the tax is payable on the returns from the investment of its capital in real estate or in the stocks or bonds of other corporations, or on its receipts or earnings from the exercise of a power to engage in other lines of business than those specified."

The State insists that it was the intention of secs. 164 and 165 to impose the tax therein provided for upon the gross receipts or earnings of certain classes of corporations and that the defendant answers to the description of that class, mentioned in the section, which includes safe deposit, trust and guarantee and fidelity companies and therefore it is liable for the tax imposed on that class of two per cent per annum upon the gross receipts and earnings accruing from its entire business in this State.  The State also contends that in this suit by it to recover the tax from the defendant corporation as calculated by the State Tax Commissioner, from whose action no appeal was taken, the Court was without authority to alter the amount as calculated by him; and that as the commissioner's calculation of the tax was based upon the amount of the gross receipts or earnings of the corporation as certified to him under the oath of its proper officer, it cannot be permitted to introduce evidence when sued for the tax by the State to alter or vary the amount of the gross receipts or earnings so certified by it to the commissioner.

No question of the constitutionality or validity of the law imposing the tax is raised by these conflicting contentions.

Nor does the trust company deny its liability, except for one year, for the payment of some tax on its receipts. It simply contests the extent of its liability. The question presented for our determination by the cross-appeals is one of the construction of the sections of the Code imposing the tax and is after all a narrow one. It is whether by the enactment of those sections the Legislature intended to tax each member of certain designated classes of corporations at one specified rate on all of its receipts, or to tax it on segregated portions of its receipts at different rates according to the kind of business from which they respectively came. If the construction contended for by the State be adopted it is only necessary to determine to which one of the designated classes the defendant belongs and when that has been ascertained it is liable for the tax, at the rate prescribed for that class, upon all of its earnings of every kind no matter from what source they came. If on the other hand the contention of the defendant be accepted as correct its gross income must be segregated according to the sources from which it arose and each portion held liable for the tax at the rate imposed upon the kind of business from which it arose, and if any portion of its income came from occupations not mentioned in the statute that portion is not liable to any tax.

The intention of a statute is to be primarily ascertained from its words and expressions in their accepted and ordinary sense. *Medley* v. *Williams*, 7 G. & J. 71; *Frazier* v. *Warfield*, 13 Md. 303. The construction must of course be upon the entire statute but when the several parts of it are not contradictory and "the language is susceptible of a sensible interpretation it is not to be controlled by any extraneous considerations." *Alexander* v. *Worthington*, 5 Md. 485, and note in Perkins, edition. The Legislature will always be presumed to intend what it has said in plain and clear terms. *Talbott* v. *Fidelity & Casuality Co.*, 74 Md. 544; *Leonard* v. *Wiseman*, 31 Md. 205; *Smith* v. *State*, 66 Md. 215; *Duvall* v. *Miller*, 94 Md. 711.

Sec. 164 in plain and clear terms and by a separate clause imposes a franchise tax at a specified rate upon the gross re-

ceipts of each of the several classes of corporations therein designated.    The classification of the corporations liable to the tax, it is true, is based upon the character of the business in which they are respectively engaged, but the rate of tax is made uniform upon the entire gross receipts or earnings of every member of each class.    The clause imposing the tax on the class to whose description the defendant answers is as follows: "A State tax as a franchise tax of two per centum is hereby levied annually upon the gross receipts or earnings of every telegraph or cable, express or transportation, telephone, parlor car, sleeping car, safe deposit, trust, guarantee and fidelity company incorporated under any general or special law of this State and doing business therein."    This clause, which is complete in itself, is not such as would naturally or reasonably be employed to provide that each of the corporations therein named should be liable to franchise taxes at different rates upon the portions of its gross receipts respectively arising from the several kinds of business in which it is engaged.

If we turn now to sec. 165, which requires each corporation to make an annual return to the Tax Commissioner of its earnings, to enable him to calculate and assess the franchise tax provided for by sec. 164, we find this language used: "It shall be the duty of each and every railroad    *    *    safe deposit, trust, guarantee and fidelity    *    *    *    company incorporated under any general or special Act of this State and doing business in this State on or before the fifteenth day of April in each and every year to make a report under oath of its president, treasurer or other proper officer to the State Tax Commissioner showing its *total* receipts or revenues accruing from business done in this State for the year."    The commissioner is then directed to file the report in his office and before a stated day to calculate the amount of the tax due by the corporation on its gross receipts, and transmit it to the Comptroller for collection.    All that the corporation is required to report is its *total* gross receipts, no sub-division thereof or specification of its sources is called for.    It is obvious that no such report

would furnish the Tax Commissioner the requisite information to calculate the amount of tax due at different rates upon the portions of the corporation's gross income arising from different kinds of business conducted by it.

Without referring in detail to the provisions of the other sections of the law, relative to the imposition and collection of the gross receipts tax provided for by sec. 164, it is sufficient to say that the expressions used in them are appropriate to, and evidently contemplate, the report to the Tax Commissioner from each corporation of only the total amount of its gross earnings from business in this State, and those expressions are inconsistent with the defendant's theory that a corporation liable to the payment of the gross receipts tax is to pay different rates of taxes upon the several portions of those receipts derived from the different branches of its business. Sec. 168 authorizes and empowers the Tax Commissioner in his discretion to examine under oath any officer or agent of any corporation liable to the payment of the tax or any other person believed to have knowledge on the subject touching its business in this State and the receipts and revenues accruing therefrom, but the manifest purpose of that power is to enable him to satisfy himself of the accuracy of the report made to him of gross profits and perhaps also to facilitate, in doubtful cases, the classification of the company.

The name of a corporation affords some indication of its true character especially when the name, as in this case, is the result of several successive amendments of the one under which it was incorporated. The powers granted by its charter afford another partial test of its character. But, as we said in *State v. German Savings Bank*, 103 Md. 205, its true character can only be determined by the nature of the transactions of which its business consists. The enumeration of the forms of transaction which may be regarded as germane to the purposes of the modern trust company is by no means a simple task. If we consider the problem from the standpoint of the variety of transactions in which as a matter of common knowledge that class of corporations currently engage "trust company" might

almost be regarded as *nomen generallissimum* for financial and promoting companies. If on the other hand we turn to the enumeration of the powers contained in the charters of such companies granted by the Legislature and appearing upon the face of the published laws in and about the year 1890, when the Act was passed making those companies liable to the tax on their gross receipts, the task is not much simplified. That the Legislature of 1890 was aware of the multiform activity of a modern trust company is apparent not only from the charters granted to such companies at that period but also from the fact that by chap. 272 of the Acts of that year it repealed the provisions of the Code theretofore existing for the formation of trust and guarantee companies saying in the preamble to the repealing Act, "Whereas, Since the passage of the Act of 1876, chapter 269,  *  *  *  it has been found that trust companies and guarantee companies, of the kind which now exist, could not be formed under it with the powers requisite for such corporations, by reason of the indefiniteness and incompleteness in that respect of the said Act, which does not provide for the creation of corporations of the same general character as those which now exist as aforesaid, and it has therefore been necessary for the General Assembly from time to time to incorporate such companies by special Act." The titles "trust company" and its associates "safe deposit and fidelity and guarantee companies" would we think, for the purposes of the gross receipts tax now under consideration, be given their accepted and ordinary meaning by holding to be appropriate, to corporations bearing those names, all kinds of business which fairly fall within the powers usually found in their charters or currently conducted by them.

The sections 164 to 171 imposing the tax with which we are now dealing are much broader in their terms than sec. 89 which, as sec. 86 of Art. 81 of the Code of 1888, was before us in the case of the *State* v. *German Savings Bank, supra.* The tax imposed by sec. 89 is not upon the *gross receipts* or the *total income* of the corporations falling within its operation but simply upon "*the amount of deposits*" held by them. The

German Savings Bank after having for many years conducted
a savings bank, began under an amendment of its charter to
do also a general banking business and we held in our opinion
that, the fact that under its enlarged powers it incidentally did
some general banking would not relieve the deposits received
in connection with its savings bank business from liability to
the tax on deposits.   We further held in that case that if the
bank had in fact abandoned its savings bank business and was
conducting a general banking business it would thereafter be
liable to taxation under the other sections of the Code applic-
able to banks of that description.   We see nothing in the
opinion in that case inconsistent with the conclusions at which
we have arrived in the present one.

Nor is there any conflict between the views here expressed
by us and our opinion in the case of *Real Estate Trust Co.* v.
*Union Trust Co.*, 102 Md. 41.   In that case it appeared that
the Union Trust Co. under its charter also conducted a bank-
ing business as a separate department of its activity.   Certain
moneys having came to the hands of the company in its ca-
pacity of trustee from a foreclosure by it of a mortgage, these
moneys were deposited by it in its banking department which
allowed interest on the deposit at two per cent.   In a suit
against the company by the parties entitled to the fund an ef-
fort was made to charge the company with interest on these
deposits at six per cent. upon the ground that it, as trustee,
had used for its own purposes the trust fund while in its hands.
We there held that the company being clothed with authority
to carry on a banking business and receive therein deposits
from others, it could take a deposit from itself in its capacity
of trustee, saying in that connection, "The trustee according
to the testimony never used a dollar of the funds and there
was no time when the actual cash on hand in its bank was not
in excess and largely in excess of the trust fund.   Of course
the funds were not specially set apart or ear marked, and they
were not required to be.   They were to the credit of the trus-
tee and were not used by the trustee."   In neither of the two
cases just mentioned were we called upon, as we are in the one

now before us, to consider the application to a trust company of a statute which by its express terms plainly requires every trust company to pay a franchise tax upon its gross receipts or earnings.

In *State* v. *B. & O. R. R. Co.*, 48 Md. 49, this Court had occassion to consider the applicability to the Baltimore & Ohio Railroad Co. of the Act of 1872, ch. 234, which in terms imposed a tax upon the gross receipts of all railroad companies. It was held in that case that while the railroad was, by virtue of the well-known exemption from taxation contained in its charter of 1826, protected from any tax upon the receipts derived from the exercise of the franchises granted by that charter, the receipts from the exercise of any franchise granted by subsequent Acts were taxable.    And, although the Court were then considering the operation of the portion of the Acts of 1872 imposing a tax on the gross receipts of *railroad companies*, it was held that if by an Act subsequent to its charter the railroad company was authorized to do a warehouse business the gross receipts derived therefrom were liable to the tax.    The Court there said, "If the Act of 1830, chapter 117, or any subsequent act, does authorize the appellee to carry on such business, that is to receive and charge for the storage of grain and other freight generally, then it is clear that the gross receipts derived from the exercise of this special privilege or franchise are liable to the tax imposed by the Act of 1872."

The Courts of last resort in New York and Pennsylvania, in construing statutes quite similar to our own taxing the gross receipts of corporations of designated characters, have both held that by gross receipts the statute meant all receipts arising from or growing out of employment of the corporations of designated capital in its designated business or otherwise.

In *People* v. *The Comptroller*, 32 App. Div. (N. Y.) 113, which was affirmed on the opinion below in 157 N. Y. 677, it was held that by the terms "gross earnings from its transportation or transmission business," as used in a statute imposing a franchise tax on the gross earnings of certain corpo-

rations, the Legislature intended that a corporation embraced within the provisions of the statute should pay the tax upon all of its receipts derived from the use of its capital in the transportation business or elsewhere even though it had been invested for business purposes in stocks and bonds of other corporations. In *Commonwealth* v. *Bush Electric L. & P. Co.,* 204 Pa. 249, in construing a statute taxing the gross receipts of electric light companies, it was held that the tax must be paid upon the entire receipts of the company although part of them were derived from the furnishing of electric power to other persons and from the sale of electric supplies. The ground of the decision was that the statute had imposed the tax upon the gross receipts of the company in clear and unambiguous terms.

A detailed statement of the sources from which the gross profits or earnings of the defendant corporation were derived was offered in evidence and appears in the record. The State admitted the accuracy in fact of the contents of the statement but excepted to its admissibility in evidence. The Court admitted it subject to exception and at the close of the case the State moved to strike it out but the Court overruled the motion and its action in that respect forms the subject of the first bill of exceptions. The sources of income set out in the statement are embraced in the following simple classification.

1st. Returns from the investment of portions of its capital, surplus and deposits in real estate, ground rents and mortgages.

2nd. Returns from investment of similar funds in bonds and stocks of other companies.

3rd. Profits on dealings in real estate, ground rents and mortgages.

4th. Earnings from loans on collateral security.

5th. Earnings from serving as trustee under mortgages.

6th. Profits from participation in various underwritings.

It is only necessary to turn to the enumeration of the powers contained in the defendant's charter to see that all of these sources of income arise from varieties of business in

which it was contemplated that it should engage. The exception to the admissibility of the statement should nevertheless have been sustained, as the company was liable for the tax on its entire earnings from all sources.

At the trial below the State as plaintiff offered three prayers, all of which were rejected by the Court. The first asked the Court to rule as matter of law that the plaintiff was entitled to recover the amount of tax due for the three years according to the computation of the Comptroller upon the defendants return of gross receipts for each of the years together with interest and also the penalty of five per cent upon the amount of the receipts imposed by the law for default in payment.

The second prayer in effect asked the Court to instruct itself sitting as a jury that if it should find that the gross receipts or earnings of the defendant were the respective sums therein mentioned for the three several years and that the State Tax Commissioner had assessed the defendant for each one of said years two per cent of its gross receipts or earnings then the verdict of the Court must be for the plaintiff for the amount which it sitting as a jury might find to be due as taxes upon the gross receipts or earnings of the defendant so assessed for the said three years with interest thereon and the penalty of five per cent imposed by the statute.

The third prayer directed the Court as a jury in determining the gross receipts or earnings of the defendant under the plaintiff's second prayer to take into consideration the gross receipts or earnings from all sources.

Assuming that the word "Comptroller" appearing in the first prayer is a misprint for "Tax Commissioner," the plaintiff's prayers should have been granted in connection with the defendant's eighth prayer.

The defendant offered eleven prayers each one of which, except the third and ninth, asked the Court to rule that the earnings from the part therein named of the defendant's business could not be considered in calculating the franchise tax sued for. The third prayer asserted that it appearing from the undisputed evidence that no part of the defendant's earn-

ings for the year ending January 31st, 1903, had been de-
rived from trust business it was not liable for any tax on its
gross receipts for that year. The ninth prayer asserted that
as a matter of law the sum paid by defendant as interest on
deposits should be deducted from the returns from said de-
posits in computing its gross receipts.

The Court granted three of the defendant's nine prayers predi-
cated upon the proposition that the earnings from specified
branches of the company's business should be excluded in
arriving at its gross receipts for the purpose of the tax, and
rejected the other six. Under the views which we have ex-
pressed in this opinion all nine of those prayers should have
been rejected except the eighth which held that $100 received
for acting as trustee of a mortgage made by a Virginia cor-
poration upon land lying in Virginia could not be regarded as
part of the receipts from business done in this State. That
prayer was properly granted, as it does not appear from the
record that the service rendered in that instance was done
within the State.

The defendant's third prayer was properly rejected as the
business done by the defendant during the year there men-
tioned was business of the trust company within the meaning
of the law imposing the tax on the gross receipts of such com-
panies as we have construed it. The defendant's ninth prayer
which was in effect granted in granting the tenth prayer
should have been refused as interest paid on deposits was
simply an item of the expense of conducting the business.

For the error of the learned Judge below in rejecting the
plaintiff's prayers and in granting the defendant's first, sixth
and tenth prayers the judgment appealed from must be re-
versed.

> *Judgment reversed and case remanded
> for a new trial, the costs in both ap-
> peals to be paid by the Central
> Trust Company.*