## Cecil v. Southern Express Company.

(Decided April 22, 1921.)

### Appeal from Boyle Circuit Court.

Carriers—Interstate Shipment of Livestock.—The transportation of an interstate shipment of livestock includes the furnishing of a car for that purpose, and a suit for the alleged breach of such a contract raises a Federal question, which is determinable under the common law, as declared by the Supreme Court of the United States.

JAY W. HARLAN for appellant.

C. C. FOX and R. C. ALSTON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

This is an action for damages growing out of the alleged failure of appellee to furnish a car for a shipment of livestock.

Appellant's stock, consisting of eleven head, was catalogued and advertised for sale at Cambridge, Ind., March 10, 1915. So that the stock might reach the latter point on March 6, application was made to appellee's agent for a car to be placed on the switch at Danville, Ky., March 5. It is alleged the car was not placed until March 7; the horses arrived at Cambridge on the 8th, too late to get them in proper condition for the sale, resulting in a loss of $3,750, the difference between the actual sale price and what appellant claimed he would have realized had the stock reached Cambridge March 6.

In bar of appellant's right to recover it was pleaded in the answer this was an interstate shipment and as such was governed by rules promulgated by the Interstate Commerce Commission, providing, among other things, that claims for loss, damage or delay must be made in writing within four months after the delivery of the property, that suit must be instituted within one year after rejection of the claim, and unless claim is so made or suit so brought the carrier is not liable. No claim of any kind was made on account of said shipment until the filing of this suit in March, 1919, more than four years after the contract was entered into.

In Adams Express Company v. Croninger, 226 U. S. 491, 44 L. R. A. (N. S.) 257, it was held that by the Carmack Amendment to the Hepburn Act, Congress had so manifested a purpose to take control of the subject of the liability of common carriers for the loss or damage to interstate shipments as to supersede all state regulations on the same subject, and, therefore, the validity of any stipulation of a contract pertaining to interstate shipments which undertakes to limit the carrier's liability raises a Federal question, which is determinable under the common law as finally declared by the Supreme Court of the United States.

In Missouri, Kansas & Texas Ry. Co. v. Harriman, 227 U. S. 657, it was held that the limitation of the time within which to bring an action for damages under a bill of lading covering an interstate shipment is a usual and reasonable provision, and there is nothing in the policy of the Carmack Amendment that is violated thereby. The

shipping contract involved in that case provided that no suit thereon should be brought after the lapse of ninety days from the happening of any loss or damage. Discussing this question the court says the policy of a statute of limitation is to encourage promptness in the bringing of actions and that there is nothing forbidding the parties from agreeing upon a shorter period, provided the time fixed is not unreasonably short, the question being one of law for the determination of the court.

In Armstrong v. I. C. R. R. Co., 162 Ky. 539, 172 S. W. 947, following Howard & Callahan v. I. C. R. R. Co., 161 Ky. 783, 171 S. W. 441, the court sustained a stipulation in a contract of carriage that no claim for loss or damage to a shipment of livestock would be valid unless claim was presented to the carrier within ten days from the time the stock was removed from the car.

In Adams Express Co. v. Cook, etc., 162 Ky. 592, 172 S. W. 1096, it was held a shipper could not recover for damages for injuries to horses caused by delay in transit, unless he gave the thirty days' notice required by the shipping contract.

Appellant contends this is not an action for the breach of appellee's contract of shipment, but an action for the breach of appellee's verbal contract to furnish a car on March 5, and as such it was to be performed solely in the state of Kentucky, is separate and distinct from the contract of shipment and not controlled by the rule governing interstate shipments. It is conceded that if the alleged damage resulted from a breach of the contract as evidenced by the bill of lading there is no foundation for the claim. The furnishing of the car was merely a part or an incident of the entire transaction. The stock could not have been transported, nor the carriage completed, except that a car was furnished for that purpose.

Transportation means not only the physical instrumentalities, but all services in connection with the receipt, handling and delivery of the property transported.

In the first section of the interstate commerce act, of 1887, known as the McCullom act, the term "transportation" was declared to embrace all instrumentalities of shipment or carriage.

Under the Hepburn act of June 29, 1906, it is provided that "transportation" shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of

any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor . . ."

The purpose of Congress to specifically impose a duty upon the carrier with respect to the furnishing of cars for interstate traffic, is clearly evidenced by this provision. This is further shown by the proviso of section 1 of the original act imposing the duty upon the carrier under certain circumstances, to furnish switch connections for interstate traffic, specifically declaring that the carrier making such connections shall furnish cars for the movement of such traffic to the best of its ability and without discrimination in favor of or against any shipper. Not only is there a specific duty to furnish cars for interstate traffic upon reasonable request therefor, but further applicable sections of the act to regulate commerce include remedies for the violation of these duties. See Chicago, R. I. & Pac. Ry. Co. v. Hardwick-Farmers Elevator Co., 226 U. S. 426, 33 Sup. Ct., 174, 57 U. S. L. Ed., 284, 46 L. R. A. (N. S.) 203.

By this legislation Congress manifestly recognized that the duty of carriers to the public included the performance of a variety of services which, according to the theory of the common law, were separable from the carrier's service as carrier, and in order to prevent overcharges from being made under the pretext of performing such additional services, it enacted that so far as interstate carriers by rail were concerned, the entire body of such services should be included under the single term "transportation" and subjected to the provisions of the act respecting reasonable rates and the like.

As stated in Fuller on Interstate Commerce, p. 103: "Transportation includes something more than the mere carriage or movement of traffic. It includes, for instance, what is a condition precedent to carriage—that is, the receipt of goods in question—and it includes as well their delivery or offer to the party for whom they are intended. The Supreme Court has declared that transportation begins with the delivery of the articles in question to the carrier to be loaded upon its cars, and ends only after they are unloaded and delivered, or offered to be deliv-

ered to the consignee at such a place as will permit him to take them into his possession. Under the general law and even before the act to regulate commerce a common carrier from the very nature of its employment was under the legal obligation to furnish suitable and necessary facilities for receiving property of all kinds offered to it for shipment over its road and connections and also for discharging the property after it shall have reached the place of consignment.''

In this connection see Southern Ry. Co. v. Reid, 222 U. S. 424, 32 Sup. Ct. 140, 56 U. S. L. Ed. 257; C. C. C. & St. L. Ry. Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 66 U. S. L. Ed. 453.

Southern Ry. Co. v. Prescott, 240 U. S. 632, holds that transportation as regulated by the act to regulate commerce includes the services of a connecting carrier as warehouseman of the goods after arrival at the point of destination and before actual delivery to the consignee. The measure of liability of a carrier of an interstate shipment under a bill of lading issued pursuant to the act to regulate commerce is a Federal question and the obligation under the act is to be governed by a uniform rule in the place of the diverse requirements of state legislation and decisions.

The term ''common carrier'' as used in the Hepburn act includes express companies. The promise or obligation to furnish a car was as much a part of appellee's undertaking as the carriage and delivery of the stock and as such is regulated by the rules applicable to interstate shipments, hence the court did not err in overruling appellant's demurrer to the answer.

The judgment is accordingly affirmed.