# Louisville & N. R. Co. v. David J. Joseph Co.

Dec. 1, 1944.

H. T. Lively, James P. Helm, Jr., and Vincent J. Hargadon, for appellant.

L. H. Vogel and Walter E. Huffaker for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The appellant, Louisville & Nashville Railroad Company (hereinafter referred to as the Railroad), instituted this action against David J. Joseph Company (hereinafter referred to as the Company) to recover $6955.02 on a contract wherein the Company agreed to indemnify the Railroad for all claims for injuries to or death of persons whether employees of either of the contracting

parties, or others, resulting from the prosecution of the work to be performed under the contract, regardless of the negligence of the Railroad. At the conclusion of the Railroad's evidence the court directed a verdict in favor of the Company and this appeal followed.

On June 18, 1937, the Railroad and the Company entered into a contract wherein the Railroad was to deliver to the Company 5250 freight cars at designated points on the Railroad's line, in such quantities and at such times as the Company might reasonably require, which cars were to be dismantled for salvage by the Company. It was agreed that the Railroad would furnish, without charge, trackage, storage and loading facilities at the dismantling points as might be reasonably necessary to enable the Company to conduct its dismantling operations and to load the resultant material. The Company agreed to furnish at its expense the labor, equipment and supplies necessary to wreck the cars and to deliver the salvage to the railroad. This controversy arose under paragraph 10 of the contract, the material part of which reads:

"The contractor agrees that it shall, and it hereby does, release the railroad company, its agents and employees from and agrees to indemnify it or them from and against, all claims for injury to or death of persons, whether employees of the contractor or of the railroad company, or others, * * * in any manner resulting or occurring, and regardless of negligence of the railroad company, its agents or employees, from or as the result of the prosecution of the work contemplated by this contract, but cars are to be transported to dismantling points at the risk of the railroad company; * * *"

The Railroad designated its Strawberry Yard in South Louisville as the point at which the Company would conduct its salvage operations. This is a large yard located in the outskirts of Louisville and contains many storage tracks. The Company was assigned tracks 1 to 4 upon which to conduct its operations. When the Company needed cars to dismantle its foreman notified the foreman of the yard switching crew and it would switch or place the desired cars on the tracks assigned the Company, as the latter had no facilities for moving or switching cars.

A negro named Robert Draper was engaged in

this dismantling work as an employee of the Company. On Sunday, August 15, 1937, after completing his work for the day, Draper had started for his boarding house about a mile distant. When he left the place he was working on the tracks assigned to the Company (his employer), instead of proceeding by the public road, or using a wide path between the tracks, he walked down the railroad track as it was a little nearer or more convenient for him to take that route than to go by the highway. After walking 910 feet from the switch leading to the track upon which he had been working, he was run over by the Railroad's switch engine and suffered the loss of both legs. The crew of the switch engine were moving a cut of 19 cars, some of which were marked "destroy" and these latter cars were to be "uncovered," or placed in a convenient location, so that they could be delivered to the Company on the dismantling tracks when it called for them. None of these cars were to be delivered to the Company on that day.

Draper brought suit against the Railroad in the St. Louis Circuit Court of Missouri to recover damages for the injuries sustained. The Railroad notified the Company of the suit and called upon it to defend and to indemnify the Railroad against any judgment which might be rendered, including costs and expenses incident to defending the action. The Company refused to defend and the Railroad was compelled to undertake the task. Draper recovered a judgment against the Railroad for $55,000 which the Supreme Court of Missouri reversed upon the ground that he was not an invitee to whom the Railroad owed a lookout duty. Draper v. L. & N. R. R. Co., 348 Mo. 886, 156 S. W. 2d 626.

The Railroad expended a total of $6955.02 in defending this suit brought by Draper in Missouri. It instituted this action in the Jefferson Circuit Court to recover this sum from the Company, averring that under the contract the Company was liable to it in that amount. The answer denied that it was the Company's duty to defend this action.

It is the contention of the Company that the clause in paragraph 10 of the contract "but cars are to be transported to dismantling points at the risk of the railroad company" exonerates it from all liability arising by reason of the accident to Draper. The Railroad insists that this phrase has reference to the transportation of

cars (to be dismantled) from towns or points on its system to towns or points where the salvaging operations are to be performed, and does not refer to switching or spotting such cars on the Company's dismantling tracks after the cars are once transported to the town where the Company is performing its task. There are other interesting questions raised in briefs but as we regard this one as conclusive of the case it is unnecessary to consider or discuss them.

It is the universal rule that in construing contracts courts attempt to arrive at the intention of the parties as expressed in the writing as a whole, and that intention is gathered from the subject matter, the situation of the parties and the conditions under which the agreement is written. Silver v. White Star Coal Co., 190 Ky. 7, 226 S. W. 102, 103; Krieger v. Title Ins. & Trust Co., 260 Ky. 1, 83 S. W. 2d 850. And words will be given their usual and ordinary meaning when there is nothing to show they were used in a different sense. Restatement of the Law of Contracts, Vol. 1, sec 235a, p. 320; Kroger Grocery & Baking Co. v. City of Cynthiana, 240 Ky. 701, 42 S. W. 2d 904; Sparks Milling Co. v. Powell, 283 Ky. 669, 143 S. W. 2d 75.

When this contract is considered in the light of the above rule, there is no ambiguity in it, but it is plain that the parties intended that the Railroad would deliver the cars at its own risk at the place where they were to be salvaged. In the first paragraph of that instrument the Company agrees "to dismantle all cars delivered to it by the railroad company at the points hereinafter designated." The second paragraph obligates the Railroad "to deliver said cars to the contractor at such point or points on the railroad's track to be designated by the railroad company." Paragraph 8 provides the salvage is to be weighed on track scales located conveniently to the "dismantling point or points." Paragraph 9 allows the Company to purchase any cars "delivered it for dismantling," and Paragraph 10 imposes the burden on the Railroad to transport the cars to the dismantling points at its risk.

This contract was written and signed by the Railroad's Purchasing Agent, J. R. Watt, who must be presumed to have known the legal meaning which has been given the word "transport" includes switching and spotting cars. Interstate Commerce Act sec 1 (3), 49 U. S.

C. A. sec. 1 (3); American Sheet & Tin Plate Co. v. United States, D. C., 15 F. Supp. 711. Cecil v. Southern Express Co., 191 Ky. 252, 229 S. W. 1041. As was said in the Powell case, 283 Ky. 669, 143 S. W. 2d 75, 77, "where words having a definite legal meaning are knowingly used in a writing the parties will be presumed to have intended such words to have their proper legal meaning in the absence of any contrary intention appearing in the instrument."

If the meaning which the Railroad contends should be given the term "transport" (that the cars were to be transported at its risk from towns on its system to the town where the dismantling work was to be performed, but not to the exact spot), then the Railroad's liability would cease when it moved such cars from a point such as Frankfort to South Louisville, although they might be a mile or more distant in the latter town from the tracks it had assigned to the Company in South Louisville upon which to do this work. When the entire contract is considered and the usual and ordinary meaning is given to the word "transport," not to mention the definite legal meaning which has been applied to that term as shown in the preceding paragraph, it is clearly apparent that there is no logical or legal basis for plaintiff's narrow and strict interpretation of the word "transport."

It follows that the trial judge correctly directed a verdict for the Company, and the judgment is affirmed.