## Taylor v. Rosenthal.

April 23, 1948.

Rehearing denied October 5, 1948.

Louis Seelbach and Albert F. Reutlinger for appellant.

Morris & Garlove and Charles W. Morris for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—
Affirming.

The sole question presented on this appeal is what
meaning did the parties to a lease covering the rental
of a motion picture theater for twenty years intend to
give the term "gross receipts"? The chancellor con-
strued this term as used in the lease to mean the gross
receipts from the sale of admission tickets, less the tax
thereon, and not to include the proceeds received from a
confectioner's stand in the lobby of the theater operated
by lessee, William Rosenthal. The lessor, T. P. Taylor,
Jr., appeals.

On June 6, 1939, T. P. Taylor, Jr., and his brother,
Horace A. Taylor, entered into a written contract with
Frank M. Krapp whereby the Taylors agreed to erect
a motion picture theater at a cost of $50,000 on a lot
they owned in St. Matthews, a suburb of Louisville, and
rent it to Krapp. Thereafter appellant, T. P. Taylor,
Jr., became the sole owner of the property, and appel-
lee, William Rosenthal, succeeded to all the rights and
obligations of Krapp under the rental contract. The
contract is well drawn but of necessity is quite long
and we quote only the parts which are pertinent to a
decision of this controversy, which are paragraphs 3
and 7:

"3. As a consideration for the said lease, the les-
sees agree and promise to pay to the lessors as rent a
minimum sum of Seven Thousand, Two Hundred Dol-
lars ($7,200.00) per annum during the first five (5) years
of said lease; a minimum sum of Eight Thousand, Four
Hundred Dollars ($8,400.00) per annum during the fol-
lowing ten (10) years of the lease; and a minimum sum
of Nine Thousand, Six Hundred Dollars ($9,600.00) per
annum during the last five (5) years of said lease. These
sums shall be guaranteed rental in each instance, and the
said minimum guaranteed rental in each instance shall
be payable in equal monthly installments in advance.
In the event that twelve per cent (12%) of the *gross
receipts,* exclusive of tax on admissions from said mo-
tion picture theatre, shall exceed the minimum guaran-
teed rental in any year, then and in that event the
lessees agree to pay to the lessors for that year such
additional sum that the rental for said year shall equal

**6**

twelve per cent (12%) of the *gross receipts,* exclusive of any tax on admissions from said motion picture theatre. Such additional sums, if any, shall be due and payable by lessees to lessors on or before thirty (30) days following the termination of the year in question. Lessees shall with such payment furnish to lessors an audit by a certified public accountant of lessees' receipts, and lessors shall have the privilege of examining lessees' books, box office receipts and ticket machine at any time. * * *'' (Our italics)

"7. Lessees hereby agree that they will use the leased premises as a theatre for the presentation of first or second run motion pictures or high grade legitimate stage attractions, including vaudeville or musical comedy or concerts, and that they will not, without the written consent of the lessors, use said premises for any other purpose whatsoever."

In the petition of this declaratory judgment action appellant averred that under the contract he was entitled to collect a rental of 12% of the gross receipts received by appellee in operating this moving picture theater and that the gross receipts included all sums received by appellee from the confectioner's stand in the lobby as well as the sums from the admission tickets, less the tax on the tickets. Appellee's general demurrer to the petition was sustained, appellant refused to plead further, his petition was dismissed and he appeals.

Reduced to its final analysis appellant's position is that the operation of the confectioner's stand in the lobby is ancillary to a motion picture theater and is as much a part of the operation of the theater as is the sale of admission tickets, hence receipts from this stand should be included in the gross receipts of the theater. Succinctly stated, the position of appellee is that we are not concerned with a definition of "gross receipts" but rather with what the parties intended and contemplated when they used that term in their contract.

It can hardly be denied that the words "gross receipts" mean the whole, entire or total receipts, as opposed to "net receipts." Webster's New International Dictionary. The cardinal rule courts follow in the construction of contracts is to gather, if possible, the intention of the parties from the contract as a whole. In at-

tempting to arrive at that intention the subject matter of the contract, the situation of the parties and the conditions under which the contract is written must be taken into consideration, and words must receive their ordinary meaning when there is nothing to show that they were used in a different sense. 17 C. J. S., Contracts, sec. 295, p. 689; 32 Am. Jur., sec. 127, p. 130; Restatement of the Law of Contracts, Vol. 1, sec. 235, p. 320; Louisville & N. R. Co. v. David J. Joseph Co., 298 Ky. 711, 183 S. W. 2d 953.

Applying this rule to a careful reading of paragraph 3 above quoted from the contract, there is but little doubt the parties intended the term "gross receipts" should apply only to admission tickets sold by the theater, after deducting therefrom the tax on the tickets. Twice in that paragraph occurs the phrase "12% of the gross receipts, exclusive of tax on admissions." The last sentence of the paragraph which deals with the payment of this 12% on gross receipts reads:

"Lessees shall with such payment furnish to lessors an audit by a certified public accountant of lessees' receipts, and lessors shall have the privilege of examining lessees' books, box office receipts and ticket machines at any time."

Thus the foundation of the gross receipts is not only rested upon the admissions but in order to give appellant a check on these receipts he has the privilege of examining appellee's books, his box office receipts and ticket machines. We are fortified in our conclusion by paragraph 7 of the rental contract. It says that the premises may only be used for first and second run motion pictures or high grade legitimate stage attractions, and that no other use of the premises may be had without the written consent of lessor. It is not probable that the parties contemplated the sale of confections in the lobby of the theater at the time the contract was made, else they would have provided therefor in paragraph 7 of the lease contract. Or had they regarded the sale of confections as ancillary to the operation of the theater, they would have incorporated a provision in the lease that the proceeds therefrom were to be included in the gross receipts and not have tied in gross receipts so closely with the sale of tickets as to show they in-

tended the term to apply to the sums received from the sale of tickets.

Appellant cites several cases, such as Sandusky Gas & Electric Co. v. State, 114 Ohio St. 479, 151 N. E. 685; Cincinnati Milford & Loveland Traction Co. v. State, 94 Ohio St. 24, 113 N. E. 654; State v. Central Trust Co., 106 Md. 268, 67 A. 267; State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 108 S. W. 2d 398, which are tax cases. It is evident that they are not in point here. When a tax is levied on "gross receipts" it applies to every penny a person, firm or corporation takes in regardless of the source from which it comes. Also, it is apparent that City of Lancaster v. Briggs, 118 Mo. App. 570, 96 S. W. 314, cited by appellant, is not controlling here, since it only determines that receipts from long distance calls constitute a part of the gross receipts of a telephone system.

Appellant places much reliance on the case of Herbert's Laurel-Ventura v. Laurel-Ventura Holding Corporation, 58 Cal. App. 2d 684, 138 P. 2d 43. But we do not see how he can derive comfort from that opinion. There, the lessee operated a drive-in cafe and bar for which he agreed to pay a minimum yearly rental of $6000, or 6% of the yearly gross receipts of the business done on the leased premises, whichever sum should be the greater. Vending machines, music boxes and telephone booths were installed and the landlord brought suit to subject 6% of the gross receipts taken in by these concessions, as well as the tips received by the "car-hops," which tips were applied on the wages of the "car-hops." In affirming the judgment of the trial court it was there written it was not the intention of the parties that the term "gross receipts," as used in the lease, should include tips or the coins deposited in the telephone booths or the vending machines.

Likewise, we conclude that in the lease contract before us the parties intended and contemplated the term "gross receipts" should relate only to the sums the lessee received from admission tickets, less the tax thereon, which tax the lease expressly excepts from the gross receipts.

Having reached this conclusion it is not necessary for us to decide whether appellee has the right under

this lease to operate the confectionery stand in the lobby without the written consent of appellant, and we do not decide this question.

For the reasons given the judgment is affirmed.