Zollie C. STEAKLEY et al., Appellants,

v.

WEST TEXAS GULF PIPE LINE
COMPANY, Appellee.

No. 10759.

Court of Civil Appeals of Texas.

Austin.

May 18, 1960.

Will Wilson, Atty. Gen., W. V. Geppert, Marvin H. Brown, Jr., Jack N. Price, Asst. Attys. Gen., for appellants.

John S. Redditt, Lufkin, Dan Moody, Dan Moody, Jr., Looney, Clark, Mathews, Thomas & Harris, Austin, W. F. Erwin, Jr., Houston, for appellee.

GRAY, Justice.

This appeal is from a judgment ordering a refund of $4,998.98 franchise taxes paid by appellee under protest.

Appellee, West Texas Gulf Pipe Line Company, is a Delaware Corporation with a permit to do business in Texas and is regularly engaged in the business of pipe-line transportation of crude oil. Among other things appellee's charter authorizes it:

> "To guarantee, purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of shares of the capital stock of, or any bonds, securities or evidences of indebtedness created by any other corporation or corporations organized under the laws of this state or any other state, country, nation or government, and while the owner thereof to exercise all the rights, power and privileges of ownership."

Appellee filed this suit against appellants, the Secretary of State, the State Treasurer and the Attorney General to recover the above sum of money paid to the Secretary of State under protest. This sum was in addition to $7,210.35 paid and admittedly owed by appellee as franchise taxes for the period from May 1, 1956 through April 30, 1957.

The controversy here arises from the question of the amount of the gross receipts of business done by appellee outside of the State of Texas during 1955. It arises from the following transaction which as stated by appellants is:

> "During the year 1955 the Appellee, West Texas Gulf Pipe Line Company, purchased certain marketable securities for a price of Five Million Seventy-eight Thousand and Eighty-eight

Dollars ($5,078,088.00). The securities represented short-term notes, or obligations, of General Motors Acceptance Corporation, the Associates Investment Company, Commercial Investment Trust, and General Electric Credit Corporation; there was also one U. S. Treasury Bill in the amount of One Hundred Thousand Dollars ($100,-000.00), which was purchased for Ninety-nine Thousand Nine Hundred and Twenty-seven Dollars ($99,927.00). The majority of the notes were for a term of 90 days; the longest term was 180 days.

> "The securities were purchased out of gross income derived from West Texas Gulf Pipe Line Company's regular business operations, i. e., pipe line transportation of crude oil. They were sold for a total of Five Million One Hundred Thousand Dollars ($5,100,-000), which represented the total maturity value of the various notes. The profit, or gain, on the transaction amounted to Twenty-one Thousand Nine Hundred Twelve Dollars ($21,-912.00)."

The above securities were purchased by Chase Manhattan National Bank as the agent for appellee, they were held by that bank in New York and were sold by it in 1955.

It was the contention of appellee in the trial court and is its contention here that the total sale price of the above securities should be included in calculating the total gross receipts of appellee from its entire business. Appellants contended in the trial court and contend here that only the net gain to appellee should be included as gross receipts for tax purposes.

At a nonjury trial a judgment was rendered awarding appellee the relief supra.

Appellant's two points are that the trial court erred:

> "in holding that the entire proceeds from the sale of the short-term notes

were 'gross receipts' from business done outside the State of Texas."

and

"in failing to admit Attorney General's Opinion No. S–212 as evidence of the departmental construction of the Attorney General and the Secretary of State in reference to the question presented for determination."

Art. 7084, Vernon's Ann.Civ.St., as effective and applicable to the question here, in part, provides:

"Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, or doing business in Texas, shall, on or before May first of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures (outstanding bonds, notes and debentures shall include all written evidences of indebtedness which bear a maturity date of one (1) year or more from date of issue, and all such instruments which bear a maturity date of less than one (1) year from date of issue which represent indebtedness which has remained continuously outstanding for a period of one (1) year or more from date of inception whether or not said indebtedness has been renewed or extended by the issuance of other evidences of the same indebtedness to the same or other parties, and it is further provided that this term shall not include instruments which have been previously classified as surplus), as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, which tax shall be computed * * *."

In answering the question here presented we must determine the meaning of the term "gross receipts" as used in said Art. 7084. Clearly the statute in its entirety is a revenue measure and as such it is to be liberally construed so as to effectuate its purpose. "The primary purpose of such a statute is to secure the payment of the taxes therein levied." Federal Crude Oil Co. v. Yount Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56, 61; Ross Amigos Oil Co. v. State, 134 Tex. 626, 138 S.W.2d 798, 800. In the latter case the court considered then (1940) Art. 7084 together with other statutes and said that:

"A construction of the foregoing articles of the statutes resolves itself into one of legislative intent; which is to be determined from the language used and the purpose in view in enacting the law."

The sometimes perplexing and elusive answer to legislative intent is avoided here by our conclusion, supported by authority supra, that the statute is a revenue measure. The question here is not the purpose of the statute but its meaning when applied to the facts before us. The Legislature did not define the term "gross receipts" as used in the statute and it must be construed to determine that meaning. Appellee does not deny that it is a corporation nor that the statute levies taxes against it in accordance with the formula therein provided for calculating such taxes. It says that the Secretary of State, in calculating such taxes, should use the total sale price of the securities supra instead of only the net gain to it from such sale.

Art. 10, Vernon's Ann.Civ.St., states the general rules for the construction of laws and in part provides:

"The following rules shall govern in the construction of all civil statutory enactments:

"1. The ordinary signification shall be applied to words, except words of art or words connected with a particu-

lar trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter."

It is to be observed that the language of the portion of the statute in controversy here is: " * * * as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business." In providing the formula for calculating the taxes the statute separates the "gross receipts from business done in Texas" from "the total gross receipts from the corporation's entire business."

In Simmons v. Armin, 110 Tex. 309, 220 S.W. 66, 70 the court said that the duty of courts is to find the intent of a statute in its language and not elsewhere, that they must give a statute a true and fair interpretation and that:

"It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

In McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722, 725, the court said: " * * * the language used in the statute is the best evidence of what was intended."

■ We think that we need not dwell on the meaning of the words "total" and "entire." "Total gross receipts" means all or the whole of the gross receipts, and "entire business" means the whole, consisting of one piece, undivided part of such business. Webster's New International Dictionary, 2d Ed.

In Taylor v. Rosenthal, 308 Ky. 4, 213 S.W.2d 435, 437, the court considered the meaning of the term "gross receipts" as used in a contract and said:

"It can hardly be denied that the words 'gross receipts' mean the whole,

entire or total receipts, as opposed to 'net receipts.' Webster's New International Dictionary."

In discussing cited tax cases the court said:

"When a tax is levied on 'gross receipts' it applies to every penny a person, firm or corporation takes in regardless of the source from which it comes."

In Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 834, the court considered the meaning of the term "gross receipts" as used in a city ordinance providing:

"Gas Companies to pay gross receipts License Tax. Every person engaged in the business of selling or distributing * * * gas for heating, lighting, power and refrigeration in the city shall pay the city, as a license tax, a sum equal to five per cent of the gross receipts from such business."

The court said:

"The word 'gross' appearing in the term 'gross receipts,' as used in the ordinance, must have been and was there used as the direct antithesis of the word 'net.' In its usual and ordinary meaning 'gross receipts' of a business is the whole and entire amount of the receipts without deduction. 18 Words and Phrases, Perm.Ed., page 697. On the contrary 'net receipts' usually are the receipts which remain after deductions are made from the gross amount thereof of the expenses and cost of doing business, including fixed charges and depreciation. Gross receipts become net receipts after certain proper deductions are made from the gross."

In Fire Ass'n of Philadelphia v. Love, 101 Tex. 376, 108 S.W. 158, 159, the court considered an Act of the Legislature requiring the association to make a report to the Commissioner of Insurance and Banking stating the "gross amount of the premiums received by it during the year

1907." Upon this report the Commissioner certified the amount of taxes to be paid. The court said:

"The premium receipts required to be reported by the officers of the insurance companies are the gross premiums received by the company in this state. Therefore, taking the language of the entire provision into consideration, it means, as stated before, that the basis upon which the tax is to be assessed is 'the gross premium receipts,' the whole amount received, without deduction or abatement."

See also the opinion of this court in Lawyers Title Ins. Corporation v. Board of Ins. Commissioners, Tex.Civ.App., 207 S.W.2d 972. Er. ref. n. r. e.

To construe the statute before us as contended for by the State would inject into it an element of uncertainty when here as in the Love case supra:

"There is no ambiguity in the language of the statute, and there can be no doubt as to what its ordinary meaning is. The rule governing the interpretation of such language is thus stated in Chambers v. Hill, 26 Tex. 472: 'Where language is plain and unambiguous, there is no room for construction. It is never admissible to resort to subtle and forced constructions to limit or extend the meaning of language. And, where words or expressions have acquired a definite meaning in law, they must be so expounded.' Under the rule of interpretation just quoted there is no room for construction of the language of the statute. It just simply means that the entire sum received by such insurance companies as premiums in this state should be the basis upon which to estimate the occupation tax required to be paid by such companies."

If however it be said that the statute is ambiguous and is therefore open to construction then:

"Such being the case, it must be construed strictly against the taxing authority. This is so because this is not a case involving the question of exemption from taxation; but, to the contrary, this is a case involving the question as to whether or not the tax is levied in the first instance. * * * where the question involved is whether the person or whom the tax is sought to be imposed comes within the statutory provision imposing the tax, the statute must be construed strictly against the taxing authority and liberally in favor of the person sought to be held. (See authorities cited by the Court of Civil Appeals.) When we apply the above rules to this case, we are compelled to apply this statute so as to give the doubt in favor of those on whom the tax is sought to be imposed." Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567, 570.

■ Under the authorities supra there is no escape from the conclusion that the entire proceeds from the sale of the securities must be included in "the total gross receipts of the corporation from its entire business."

■ Appellant's second point complains of the trial court's refusal to admit in evidence an Attorney General's opinion dated August 13, 1956 addressed to the Secretary of State. The question propounded was: "Should the gross amount received in the sale of capital assets be included as 'gross receipts from business done' for franchise tax purposes?"

The above question was answered:

"The proceeds of a sale of capital assets, or the conversion of capital assets to cash, by a corporation, without gain, does not constitute 'gross receipts from its business done in Texas' under Article 7084, V.C.S.; profits from the sale of capital assets would constitute 'gross receipts.'"

The opinion was offered as evidence of departmental construction. At the time the opinion was offered in evidence the trial court asked if there was any issue as to departmental construction subsequent to the opinion and appellant's counsel replied:

"I don't believe there could be, actually. There has been no testimony of any departmental construction. There has been testimony to the effect that this is the departmental construction since the date of this opinion, and it is the plaintiff's own testimony—and I think they are bound by it."

The opinion does not purport to support its expressed conclusion by any Texas authority but states: "There are no Texas cases on this point, * * *." It then proceeds to discuss cases from other jurisdictions.

Appellants argue: that weight is to be given to departmental constructions; that the Attorney General is the legal adviser to the heads of the departments of government; that his opinions are followed by such departments, and that they are considered departmental constructions. We may agree with the above statements but as to the question before us the following language from Fire Ass'n of Philadelphia v. Love, supra, on motion for rehearing, 108 S.W. 810, is applicable:

"Counsel also insist that we should be governed by the construction placed upon the former law by the executive officers charged with its enforcement. When consistent with the language construed, and when that to be construed is the same, such construction is entitled to great weight; but when the language to be construed is plain and unambiguous, as is that before us, executive construction is entitled to little consideration. G. H. & S. A. Ry. Co. v. State, 81 Tex. 602, 17 S.W. 67. In the case cited the court said: 'If the words contained in the act under consideration were of doubtful meaning, we could not lightly disregard the construction given them by the officers of the state who were called upon to act upon them. But their import appears too clear to admit of any reasonable doubt. We are constrained, therefore, to follow our own convictions, regardless of the views manifested by the acts of the officers of the executive department.'"

Appellants' points are overruled and the judgment of the trial court is affirmed.

Affirmed.