James E. LUCKETT et al., Individually and as Members of and Constituting Kentucky Tax Commission. Appellant

v.

## TEXAS EASTERN TRANSMISSION CORPORATION, Appellee.

Court of Appeals of Kentucky.

June 17, 1960.

William S. Riley and Virginia Collins, Frankfort, for appellant.

Joseph J. Leary, Frankfort, Joseph Stopher, Louisville, for appellee.

Robert F. Matthews, Jr., Asst. Atty. Gen., amicus curiae.

John R. Cook, Jr., Lexington, for Kentucky Municipal League.

MOREMEN, Judge.

Appellee, Texas Eastern Transmission Corporation, is a foreign public service company which operates 5,415.7 miles of interstate gas transmission pipeline—229.3 miles of which are located in Kentucky.

KRS 136.120 created a franchise tax on such pipeline companies, and appellee is subject to that tax.

The circuit court held that the Department of Revenue, in several particulars, failed to use a proper formula for the valuation of appellee's franchise and ordered that the assessment be set aside. Hence this appeal.

In Luckett v. Tennessee Gas Transmission Co., Ky., 331 S.W.2d 879, which was decided while the instant case was pending, we disposed of some of the problems of equalization, and the discussion will not be repeated. However, one point particularly stressed herein involves the application of the equalization factor to the tangible properties of appellee. Tangible property of a franchise taxpayer cannot constitutionally be assessed at any higher level than that at which the tangible properties of the same class of all other taxpayers are generally assessed.

Here we are concerned with subsections (2) and (3) of KRS 136.160, which read:

"(2). Except as provided in subsection (3) of this section, the department shall fix the value of the capital stock in this state of foreign public service corporations by capitalizing the net income derived in this state, or shall fix the entire value of the capital stock of the corporation by some other method and then fix the value of the capital stock in this state by determining from the amount of gross receipts of the corporation the proportion which the gross receipts in this state, within twelve months next before December 31 of the year for which the assessment is made, bears to the entire gross receipts. The value of the capital stock in this state, less the assessed value of the tangible property assessed in this state, shall be the correct value of the corporate franchise of the corporation for taxation in this state.

"(3) If the lines or routes of a domestic or foreign railway company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telephone company, telegraph company, press dispatch company, bus line company, common carrier trucking company, air transport company, palace car company, dining car company, sleeping car company, chair car company, tank car company, coal car company, *pipeline company,* water transportation company, or other like company or business performing any public service, extend beyond the limits of the state, that proportion of the value of the capital stock which the length of the lines or route operated, owned, leased or controlled in this state bears to the total length of the lines or route operated, owned, leased or controlled in this state and elsewhere shall be considered in fixing the value of the cor-

porate franchise of such corporation liable for taxation in this state."

Under subsection (2) the Kentucky Tax Commission elected to use "some other method" to fix the entire value of the capital stock of the corporation, and applied the capitalization of earning process as being fair and correct.

The Commission obtained the overall value of the capital stock of the corporation by capitalizing the "net utility operating income" at the rate of 6%. In the circuit court appellee complained that the 6% rate was too low—as the rate of capitalization is lowered, the higher becomes the value of the capital stock—because it failed to take into consideration the fact that the company deals in a commodity which is expendable and depletable, and the court held that the taxing authorities should have taken those facts into consideration.

■ The supervisor of the State Valuation Section had testified that the Department took into consideration the fact that gas supply, as it is now estimated, is subject to exhaustion, but stated it also considered the possibility of the discovery of new gas fields. The proof disclosed that the estimated reserves of natural gas are enough to supply for nearly twenty-one years the requirements of the year 1956. It was shown that appellee owned or had contracted reserves sufficient to meet their sales requirements for about thirteen years. We believe this fact alone is enough to distinguish this case from Cumberland Pipe Line Co. v. Lewis, D.C., 17 F.2d 167, 169, relied upon by the trial court. That case, which was decided in 1926, presented the following facts: The pipeline company was a Kentucky corporation. Its lines were located entirely in this state and it transacted no business elsewhere. Its lines traversed 27 counties and transported crude oil. The court held that the duration of the company's business depended entirely upon the profitable life of oil deposits which could be reached by its line, and

held that the Tax Commission had "shut its eyes" to what the future income may be. In Texas Co. v. Commonwealth, 303 Ky. 590, 198 S.W.2d 316, we questioned the soundness of the rule. However, we believe it is unnecessary to attempt to lay down an unalterable rule. Under some conditions imminent depletion may be a vital factor in reaching proper valuation. In this rapidly changing time—when technical discovery has outstripped practical application of a great part of the new intelligence—a twenty-one year inventory of a present usable commodity (or even a thirteen year one) seems to diminish the factor of exhaustion to a point where it is of little aid in fixing true value. We are of opinion the trial court erred in finding that the Commission improperly failed to consider the exhaustion factor. Under the record it was not shown that the 6% capitalization rate used by the Commission in arriving at the overall value of the capital stock was not sound.

When we return to the above quoted subsection of KRS 136.160, we find that after fixing the entire value of the capital stock by "some other method" the Commission must,

"then fix the value of the capital stock in this state by determining from the amount of the gross receipts of the corporation the proportion which the gross receipts in this state, within twelve months next before December 31 of the year for which the assessment is made, bears to the entire gross receipts."

In Taylor v. Rosenthal, 308 Ky. 4, 213 S.W.2d 435, "gross receipts" was defined as the whole, entire or total receipts, as opposed to "net receipts."

We assume that the General Assembly, when formulating the statute, used the words, gross receipts, according to the generally accepted definition. It is frankly admitted in the brief for appellant that the Tax Commission did not literally follow the statute. It is said that the Tax Commis-

sion was of opinion that an allocation of capital stock value based on gross receipts was unrealistic and by using it one could not obtain the actual value attributable to the use of the taxpayer's property in Kentucky and since the Commission believed that the method outlined in the statute was not effective it adopted a formula of its own and used what is called "earned gross receipts" instead of plain "gross receipts." "Earned gross receipts" was defined as that part of the gross which is earned as a unit of gas is transported a unit of distance and, since the volume of gas transported is directly proportional to the horsepower of the compressor stations and the size and length of appellee's pipes, it related the compressor stations to the system on a horsepower basis.

It is noted that a further modification of subsection (3) of the statute was made when the Commission refused to consider only the length of the pipelines operated. It was shown in the record that in appellee's system the various pipelines vary in size from four inches to thirty inches in diameter. All the pipe in Kentucky, with the exception of about a mile, has a diameter of thirty inches. Again in the name of realism all the pipeline in appellee's entire system was reduced to a common denominator and the equivalent miles in Kentucky were related to total equivalent miles in the system on a ten inch equivalent basis calculated on the relative inside diameter of the pipe. Thus, for taxable purposes the length of line referred to under subsection (3) of KRS 136.160 was increased from its actual length to a length three times that amount. We find nothing in the statute which indicates that this theory of "equivalent mileage" is acceptable. The lineal measurement of line, alone, should be considered.

We think the trial court was correct when in its conclusions of law it admonished the Commission to follow the statute, and said:

"In the case before the court the 'entire gross receipts' for the tax year

was $171,052,517. The 'gross receipts in this state' were $151,413. The proportion which the gross receipts in this state bear to the entire gross receipts is .089%. It follows, therefore, that the Department and the Commission should have fixed the value of the capital stock in this state at .089% of the entire capital stock of the taxpayer."

Although it is a minor subject, we suppose our conclusion in the matter of depletion of gas reserves requires a reversal of part of the judgment. We find the balance of it correct and it is, therefore, affirmed.

Affirmed in part and reversed in part.