Robert S. **CALVERT**, Comptroller of Public
Accounts, State of Texas, et al.,
Appellants,

v.

**AUDIO CENTER, INC.**, Appellee.

No. 10860.

Court of Civil Appeals of Texas.

Austin.

May 3, 1961.

Rehearing Denied May 17, 1961.

Will Wilson, Atty. Gen., W. V. Geppert, L. P. Lollar, W. E. Allen, Asst. Attys. Gen., for appellants.

Blades, Crain, Slator & Winters, Houston, for appellee.

ARCHER, Chief Justice.

This suit was filed by appellee under Article 7057b, to recover $1,487.24 paid by it under protest. This sum of money was claimed by the Comptroller of Public Accounts to be due as taxes upon the first sale of "radios" as defined in Section 1(a) of House Bill 630, Ch. 522, p. 1607, Acts

1955, 54th Leg., Regular Session (codified by Vernon as Article 7047*l*–1).

The appellants say that the principal question on this appeal is whether the radio tuners sold by appellee " * * * receive oral, musical and similar sound broadcasts transmitted by radio broadcasting stations, * * *" within the contemplation of the quoted language of Article 7047*l*–1, V.A.C.S. The trial court held that they did not.

Appellants admit that if this quoted portion of the statute is held to mean that the radio tuners must both receive the signal "transmitted by radio broadcasting stations" and convert the signal back into the "oral, musical and similar sound" which originated at the time and place the sound was first produced then the judgment of the trial court possibly should be affirmed.

However, if the statute contemplates the tax in question to be levied against the tuners in question for the reason that they will "receive" the electromagnetic waves "transmitted by radio broadcasting stations" and convert these incoming radio waves into perceptible electrical signals, then appellants believe the judgment of the Trial Court should be reversed and rendered in their favor.

The appeal is based on four points assigned as error and in effect are that the court erred in holding that part of the definition of a radio, which follows the words "and shall include" in Sec. 1(a) of Art. 7047*l*–1, is to be limited under the rule of *ejusdem generis* by that part of this Article which precedes these words, in holding that the caption of H.B. 630, 54th Legislature states the intent of the Legislature to not impose the tax upon radio tuners sold as separate items and in holding that Art. 20.01 of New Title 122A, V.A.T.S., may be used in construing the intent of the 54th Legislature expressed in its Acts of 1955, under which latter Act the taxes in question were assessed by the Comptroller, and in not holding that the tuners "receive oral * * * broadcasting stations," within contemplation of Article 7047*l*–1.

We do not believe that the Legislature intended to tax tuners, a component part of radio receiving sets, when sold separately.

The statutory definition of radio in Article 7047*l*–1 does not clearly cover component parts of radio receiving sets such as tuners, and if there is doubt such should be resolved in favor of the appellee.

The Legislature in passing Title 122A, Taxation General of the 56th Legislature, 3rd Called Session in 1959, in repealing Article 7047*l*–1 in regard to taxation on radios included within the caption of the Act, and imposing for the first time a tax on component parts of radio receiving sets, reflects that Article 7047*l*–1 did not apply to the sale of such parts when sold separately.

The caption of H.B. 630, 54th Legislature (Article 7047*l*–1) insofar as relevant to this cause, reads:

"An act imposing an excise tax upon the sale of radios * * *; defining terms used in the Act;"

The definition of radio is contained in Section 1(a) which reads as follows:

"(a) 'Radios' shall mean the apparatus or devices commonly known and sold as radios or radio receiving sets and shall include any instrument, apparatus or mechanical contrivance constructed, assembled or designed to receive oral, musical and similar sound broadcasts transmitted by radio broadcasting stations."

The caption of the Act by referring to the body of the Act for a definition of the terms, indicates that the Legislature was using the term "radio" as defined therein.

There was exhibited an electronic tuner which had a built-in AM antenna, but according to the testimony of plaintiff's (appellee's) witnesses Corry and Lucas, it was necessary, in order for it to receive FM signals, to attach an FM antenna, and in order for the model exhibited to receive a

sound broadcast, it was necessary to add two additional component parts, the amplifier and finally a transducer, or speaker. Based on the testimony, the trial court found that a tuner is capable only of receiving high frequency radio signals when an antenna is either built-in or attached thereto, and in order to receive a sound broadcast the radio signal must be, in addition to conversion into electrical audio frequencies, amplified by a separate component, an amplifier, and then converted by another separate component, a speaker or ear phone, into sound before it can be heard.

As we have stated, we do not believe a component part of a radio receiving set, a tuner,' which will only intercept an inaudible high frequency signal when an antenna is attached or built into same, comes within the statutory definition of a radio— "any instrument * * * designed to receive oral, musical and similar sound broadcasts * * *"

█ Words in a statute must be given their generally accepted meaning. Daniel v. Life Ins. Co. of Virginia, Tex.Civ.App., 102 S.W.2d 256.

We believe that the plain ordinary meaning of the words used in the statutory definition shows that the statute means instruments "designed" to receive an auditory program from a broadcasting station which can be heard.

Section 1(j) of the statute reads:

"(j) * * * However, the financing charges on installment sales, any reasonable installation charges, service contracts or antennas, when invoiced separately and apart from the retail selling price of the radio and/or television set, shall not be considered a part of the retail * * * price."

█ The basic rule of construction of statutes is that courts must take statutes as they find them, as set out in Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66. Philtex Chemical Co. v. Sheppard, Tex.Civ.

App., 219 S.W.2d 1010, er. ref., N.R.E.; Steakley v. West Texas Gulf Pipe Line Co., Tex.Civ.App., 336 S.W.2d 925.

In the Philtex case, supra, the court held [219 S.W.2d 1012]:

"We believe that Art. 7047(46) R.C.S. of Texas, levies a tax upon the occupation of manufacturing carbon black only when the same is made from gas in whole or in part, and that it was the legislative intent to classify the making of carbon black from gas into the two classes, and into them only. This is giving to the language of the statute a plain as well as a literal meaning. 39 Tex.Jur. 197; Webb v. American Asphaltum Min. Co., 8 Cir., 157 F. 203."

Since it does not clearly appear that the Legislature intended to tax component parts of radio receiving sets and especially radio tuners, then the doubt should be resolved in favor of appellee. Philtex Chemical Co. v. Sheppard, supra; Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567.

The introductory paragraph of the 1959 Acts, 56th Leg., 3rd C.S., Ch. 1, Sec. 1, recites: "That the following Chapters and Articles are adopted and shall constitute a new Title of the Revised Civil Statutes of Texas to be known as 'Title 122A, Taxation—General.'"

The Caption of H.B. 11, in part, relevant to this case reads:

"An Act * * * increasing or otherwise changing the rates of the * * * excise tax on radio and television sets; * * * levying certain new and additional taxes for the support of the State Government including * * * excise taxes on * * * component parts used in the assembly, installation, maintenance or testing of radios * * *."

The definition of "radio" in Art. 20.01 (e) reads:

"(e) 'Radios' shall mean the apparatus or devices commonly known as radios and radio receiving sets and shall include any instrument, apparatus or mechanical contrivance constructed, assembled or designed to receive oral, musical and similar sound broadcasts transmitted by radio broadcasting stations and shall include all sub-assemblies, devices, or instrument designed to be used in conjunction with other devices which when combined will constitute a device defined as a radio under this Chapter."

Subsection (h) taxing component parts reads:

"(h) 'Component part' shall mean any mechanical or electronic apparatus, equipment, device or electronic part or combination thereof, and shall also include any metal, wood, or plastic housing or cabinet built or manufactured to contain a radio, television, or phonograph, or any other apparatus, equipment, device, or part as may be used in the assembly, installation, maintenance or testing of radios, television sets or phonographs as defined under this Chapter."

It is clear that since the enactment of the above Article and the sections that tuners and other component parts of radios are now taxed, Article 24.01, Sec. 3, states:

"Sec. 3. Construction of this Act. With respect to the provisions of this Act which tax transactions subject to taxation by the State prior to the effective date of this Act, this Act shall be considered to be the equivalent of a revision by amendment even though it is in the form of an enactment of new law and repeal of the old law. This Act shall be construed to make a substantive change in the prior law only where the language of this Act manifests a clear intent to make such a change."

Sec. 9 reads:

"Sec. 9. Emergency. The necessity for revising and rearranging the taxes referred to in this Act and the pressing necessity to realize additional revenue for the State creates an emergency * * *."

■ We believe that it is proper for this Court to use an Amendatory Act to arrive at the intention of the Legislature in a previous Act. However such is not binding on the Court but may be considered. Creager v. Hidalgo County Water Improvement Dist. No. 4, Tex.Com.App., opinion adopted by the Supreme Court, 283 S.W. 151, 153; State v. Rice Properties, Tex.Civ.App., 163 S.W.2d 669, er. ref.

In the Creager case the Court said [283 S.W. 153]:

"While this amendment, approved May 26, 1923, cannot affect the litigation in the present controversy, yet it is a legislative interpretation of the act amended, especially in view of the emergency clause declaring:

"'The fact that there is not now any method provided by law for the paying of the costs of the organization and other expenses necessarily incurred by water improvement districts prior to the issuance and sale of bonds of said district,' etc.,—creates an emergency, etc. This is not controlling upon the courts by any means, but it is worthy of consideration."

The judgment of the Trial Court is affirmed.

Affirmed.