BILL ANEST *et al.*, Plaintiffs-Appellees, v. FRANK BELLINO, Defendant (Duane Starmach, Defendant-Appellant).

Second District   No. 2—86—0204

Opinion filed January 13, 1987.

John G. Radosevich and Donald M. Lonchar, Jr., both of Lonchar & Nordigian, of Waukegan, for appellant.

John C. Baumgartner, of Churchill, Baumgartner & Phillips, Ltd., of Grayslake, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant Duane Starmach appeals from a judgment entered in the circuit court of Lake County in favor of plaintiffs, Bill Anest, Peter Anest, and Zion State Bank as trustee, on defendant Starmach's counterclaim for declaratory judgment. The trial court determined that the phrase "gross sales" used in the parties' restaurant lease to determine the amount of additional percentage rent included the sales of lottery tickets. We reverse and remand.

Plaintiffs brought a complaint for accounting of gross sales on November 9, 1984, under a lease agreement for a 24-hour truck-stop restaurant entered into by plaintiffs as lessors and defendants' assignors as lessees on January 7, 1976. Paragraphs 4 and 5 of the rider to the lease of the same date provide in part:

"4. That in addition to the rental heretofore provided herein, Lessee will pay to Lessor an additional rental equal to five (5%) percent of all gross sales in excess of $35,000.00, in each calendar month. ***

5. That to determine said rental, Lessee agrees to install a cash register system providing a continuous tape showing gross sales, which system shall be of a type agreed upon between Lessor and Lessee."

Defendant Duane Starmach brought a counterclaim for declaratory judgment. He alleged that (1) he sells lottery tickets for which he receives a 5% "agency fee"; (2) counterdefendants claim that under paragraph 4 of the rider to the lease, "gross sales" include the total amount of the lottery tickets sold; and (3) he has included his 5% agency fee from the State in computing the additional rental of 5% of gross sales over $35,000 per month. He stated his position that

counterdefendants are entitled to only the gross agency fees which have been paid to counterdefendants. He prayed for a declaratory judgment that the words "gross sales" do not include the total amount paid for the lottery tickets but only the agency fee. In Starmach's memorandum of law, he argued that the question presented was whether gross sales included the commission or the gross receipts.

Section 1670.140 of the lottery rules states that a lottery agent is entitled to a commission and to bonuses for winning tickets of prizes of at least $1,000. (11 Illinois Administrative Code 1670.140(d), (e) (1974).) The application of the restaurant, accepted by the Division of State Lottery, provided for a 5% commission, less a $5-per-week service charge. A lottery agent is to deposit to the credit of a State lottery fund account, or pay to a lottery representative, all monies received from the sale of tickets, less the amount of commissions, fees, and money retained as compensation and paid out to winners. 11 Illinois Administrative Code 1670(g) (1974); Ill. Rev. Stat. 1985, ch. 120, par. 1171.

The trial court found that sales of lottery tickets are sales within the lease. Judgment was entered in favor of plaintiffs for $36,799.24.

Defendant Starmach argues that the sales of lottery tickets could not have been within the contemplation of the parties at the time of the lease because such sales were not made at that time. It is also argued that the provisions of the Revenue Act concerning the lottery demonstrate an intent to have the lottery system exercise complete control and proprietary interest in the funds produced by the sale of lottery tickets. Starmach analogizes the system to a consignment because the lottery agent holds the funds for the lottery system, except for the commissions. Plaintiffs argue that the entire amounts taken for the sale of lottery tickets should be included as "all gross sales" because the phrase is broad.

■ As plaintiffs argue, defendant Starmach has taken a new position on appeal that the entire sales of the lottery tickets are outside the terms of the lease. Below he argued only that his 5% commission should be subject to the 5% additional rent. As defendant never adopted this theory in the trial court, he cannot argue it in the appellate court. (*O'Hare International Bank v. Feddeler* (1973), 16 Ill. App. 3d 35, 38.) We therefore remand for a determination of that amount of additional rental attributable to the 5% commission.

■ Section 2—701(a) of the Illinois Code of Civil Procedure authorizes the entry of a declaratory judgment in cases of actual controversy over the construction of a contract. (Ill. Rev. Stat. 1985, ch.

110, par. 2—701(a).) The decision to grant or deny a request for a declaratory judgment is a question that rests within the sound discretion of the trial court, whose determination will not be disturbed in this court absent an abuse of that discretion. *Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 215.

●3 In interpreting a lease, the intent of the parties should be determined. (*Midwest Bank & Trust Co. v. Scot Lad Foods, Inc.* (1986), 140 Ill. App. 3d 166, 169.) Words of a lease are to be given their common meaning. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172.) A strict construction which works a result different from that intended should not be adopted. (*Harvey v. Rolands of Bloomington, Inc.* (1968), 94 Ill. App. 2d 444, 449.) The construction of the terms of a contract is an issue of law. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 171.) As a question of law, the appellate court can review a lease provision independent of the trial court's judgment. *Midwest Bank & Trust Co. v. Scot Lad Foods, Inc.* (1986), 140 Ill. App. 3d 166, 170.

Defendant Starmach primarily relies upon *Taylor v. Rosenthal* (1948), 308 Ky. 4, 213 S.W.2d 435, and *Herbert's Laurel-Ventura, Inc. v. Laurel Ventura Holding Corp.* (1943), 58 Cal. App. 2d 684, 138 P.2d 43. In *Taylor*, a lease for the rental of a motion picture theater provided for additional rent of 12% of "the gross receipts, exclusive of tax on admissions." (308 Ky. 4, 7, 213 S.W.2d 435, 436.) The lessor sought 12% of the money received by the lessee from the admission tickets and from the sales from the confectioner's stand in the lobby. The court found that the parties had not contemplated that "gross receipts" would refer to anything other than the admission tickets in light of the exclusion of tax on admissions and the lease paragraph which gave the lessor the privilege of examining the box-office receipts.

In *Herbert's*, a lease for a drive-in cafe provided for additional rent based upon the "gross receipts of the business done by it on the demised premises" and was defined as "all money and other things of value received by or paid to the Lessee *** including *** the sale of all merchandise of whatsoever kind and character and all services performed by the Lessee or anyone working for the Lessee for which any such compensation is received." (*Herbert's Laurel-Ventura, Inc. v. Laurel Ventura Holding Corp.* (1943), 58 Cal. App. 2d 684, 687, 138 P.2d 43, 44.) The lessor claimed that the money deposited in the cigarette vending machines, music boxes, and public telephone, all of which were installed after the commencement of business, was part of

the gross receipts along with the monthly amounts paid by the concessionaires for the privilege of installing the machines, and the tips given to the car hops. Lessee neither received the amounts sold through the cigarette vending machines, nor were the amounts entered on the books as receipts. For a period of time, the lessee received 50% of the amounts deposited into the music boxes, but then a monthly payment was made. Lessee also received for a period 15% of the money collected from the public telephone.

The *Herbert's* court noted that none of the money received from the concessionaires passed into the lessee's hands and that the lessee only received either commissions or flat rentals for installation. Also noted was that the cigarettes and records remained the property of the licensees. The court concluded that the machines and the public telephone were aids to increase the rentals and were not part of the gross receipts. Tips for the car hops likewise were not gross receipts because they never increased the cafe's receipts and because the tips' inclusion was not mentioned in the lease.

In response, plaintiffs cite *McComb v. McComb* (1967), 9 Mich. App. 70, 73, 155 N.E.2d 860, 861, which interpreted the phrase "gross sales" in a lease of a supermarket, which phrase was defined as including "all sales of merchandise, service and other receipts whatsoever." Given this expansive definition, the court upheld the trial court's conclusion that the entire travelers' checks receipts, not just the commission paid to the store for handling, were included in the gross sales.

The phrase "gross sales" is imprecise and its definition in a given case depends mainly upon the wording established by the contract. (9 Mich. App. 70, 74, 155 N.W.2d 860, 862; see Annot., 58 A.L.R.3d 384, 437-45 (1974).) We hold that the finding by the trial court that all the money received by the restaurant from the sale of lottery tickets is to be included in gross sales was erroneous. Although the restaurant actually handled the money, that portion of the money belonging to the lottery system was not intended by the parties to be included in gross sales. Only the commissions and bonuses belong to the restaurant, and only those amounts increase the restaurant's sales. Plaintiffs claim that the cases cited by defendant are distinguishable from *McComb* because they do not interpret the phrase "gross sales" which is used in the instant lease. However, while *McComb* interprets the phrase "gross sales," it was expansively defined there to include "and other receipts whatsoever." Although *Taylor* and *Herbert's* interpret the phrase "gross receipts," under the circumstances of this case, gross sales are not significantly different

from gross receipts. While gross sales have no relation to profit (*Levy v. Forma* (1946), 65 N.Y.S.2d 505, 507, *aff'd* (1948), 297 N.Y. 848, 78 N.E.2d 865) and while items which the lessee must pay from the gross sales and which reduce his profit may be included in gross sales (see 65 N.Y.S.2d 505, 507 (amount of Federal excise tax included in gross sales even though tax must be deducted by lessees as item of expense); *Schoen-McAllister Co. v. Oak Park National Bank* (1953), 349 Ill. App. 500, 505 (lessee obligated to pay additional rent on gross sales including amounts paid for State retailers' occupation tax)), amounts which are not income to a lessee are not received by him within the meaning of gross sales. The money received from the sale of lottery tickets, minus the amounts retained by the lottery agent, temporarily come into the possession of the lottery agent, but are not his property.

The judgment of the circuit court of Lake County is reversed insofar as it entered judgment in favor of plaintiffs and included sales of Illinois State lottery tickets as sales for the purpose of computing the percentage rental to be paid by the defendant, and the cause is remanded for a determination by the trial court of the amount due plaintiffs based on the 5% commission paid to defendant which was not objected to by him in the trial court.

Reversed and remanded.

DUNN and REINHARD, JJ., concur.